Wilton CHATMAN-BEY, Appellant,

v.

Edwin MEESE, III, Attorney General
of the United States, et al.

No. 84-5901.

United States Court of Appeals,
District of Columbia Circuit.

Aug. 5, 1986.

Wilton Chatman-Bey, pro se.

Peter Buscemi, Washington, D.C., appointed by this court, was on the supplemental briefs, for appellant.

Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Thomas J. Tourish, Jr., John C. Martin and Ina Strichartz, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before WALD, MIKVA and GINSBURG, Circuit Judges.*

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

This case concerns the interaction of federal and District of Columbia statutes bearing on the parole eligibility of persons serving consecutive sentences for violations of both the United States Code and the District of Columbia Code: the federal prescription is 18 U.S.C. § 4205(a) (1982), which provides for parole eligibility after service of one-third of the prisoner's term or terms or, at a maximum, 10 years; the

---

* As stated *infra* note 10, the merits of this appeal, set out *infra* at 991–994, although not the question of jurisdiction, set out *infra* at 990–991, have been resolved by the court en banc.

District of Columbia law in point is contained in D.C. Code §§ 24–203(a), –204(a) (1981), which render a prisoner eligible for parole after service of "the minimum sentence imposed." The action was commenced *pro se* by Wilton Chatman-Bey, a prisoner incarcerated in the federal penitentiary at Lewisburg, Pennsylvania. Chatman-Bey contends that the Federal Bureau of Prisons (FBP or Bureau) incorrectly fixed his parole eligibility date at October 3, 1999 rather than at June 3, 1991, ten years after he commenced service of his consecutive U.S. Code and D.C. Code sentences.

Because the case raises intricate and substantial issues, we appointed counsel to represent Chatman-Bey on appeal and, by order dated November 27, 1985, requested briefing by both sides on jurisdictional and substantive points. Having considered the party's full presentations,[1] we conclude that jurisdiction over the case is properly exercised in this district, and that the FBP employed an arbitrary approach to the calculation of Chatman-Bey's parole eligibility date. Under the FBP's approach, parole eligibility dates can vary widely depending upon the chronological order in which U.S. Code and D.C. Code sentences are imposed. Shuffling the order of Chatman Bey's sentences, for example, the FBP's calculation method would lead to these diverse results: parole eligibility after 10 years, 11⅔ years, 18⅓ years, 20 years.

Under the approach proffered by Chatman-Bey's appointed counsel, shuffling the chronological order of U.S. Code and D.C. Code sentences would not alter the time a prisoner must serve prior to parole eligibility. The uniformity this approach assures, we emphasize, is not achieved by nullifying D.C. Code offense minimum sentence periods. On the contrary, those time periods— whether 10, 20, or 40 years, for example—

uniformly must be served, under the calculation method urged on behalf of Chatman-Bey, prior to parole eligibility.

We are unable to attribute to Congress the irrational scheme pressed upon us by the FBP when an alternative, harmonious reading of U.S. Code and D.C. Code prescriptions is evident. We therefore adopt the interpretation that reasonably accommodates both U.S. Code and D.C. Code instructions, and accordingly reverse the judgment of the district court.

## I. BACKGROUND

Three consecutive sentences imposed on appellant Chatman-Bey set the background for this case. (1) On January 3, 1975, Chatman-Bey was sentenced in the United States District Court for the District of Maryland to a term of 25 years for U.S. Code offenses (sexual assault and assault with intent to commit murder) committed in April 1974. (2) On June 18, 1975, he was sentenced in D.C. Superior Court to concurrent terms of 10 to 30 years for D.C. Code offenses (armed kidnapping, armed robbery, assault with a dangerous weapon) committed in November 1973. (3) On January 10, 1977, he was sentenced, again in the United States District Court for the District of Maryland, to a five-year term for a U.S. Code offense (sending a threatening letter to a federal judge). Chatman-Bey began serving these three consecutive sentences on June 4, 1981, when he was released by the State of Maryland from service of a prison term previously imposed in that jurisdiction.

In August 1981, shortly after Chatman-Bey's incarceration at the Lewisburg penitentiary, FBP officials calculated his parole eligibility date. The principal statutes relevant to the calculation are 18 U.S.C. § 4205, and D.C. Code §§ 24–203(a), –204(a). They provide in pertinent part:

*18 U.S.C. § 4205(a)*

---

1. The government filed its initial brief on April 18, 1985, and a first supplemental brief, asserting the district court's lack of jurisdiction, on November 21, 1985. In response to this court's November 27, 1985 call for further briefing, the government filed a second supplemental brief on January 16, 1986, and Chatman-Bey's ap- pointed counsel filed a comprehensive supplemental brief for appellant on April 7, 1986. On May 13, the government responded with a further brief, to which appellant replied on June 9. The court acknowledges the excellence of the representation appointed counsel furnished to appellant.

Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law.

*D.C. Code § 24–203(a)*

[I]n imposing sentence on a person convicted in the District of Columbia of a felony, the justice or judge of the court imposing such sentence shall sentence the person for a maximum period not exceeding the maximum fixed by law, and for a minimum period not exceeding one-third of the maximum sentence imposed, and any person so convicted and sentenced may be released on parole as herein provided at any time after having served the minimum sentence.

*D.C. Code § 24–204(a)*

Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe. While on parole, a prisoner shall remain in the legal custody and under the control of the Attorney General of the United States or his authorized representative until the expiration of the maximum of the term or terms specified in his sentence without regard to good time allowance.

Guided by an FBP Policy Statement,[2] Bureau officials proceeded through these steps. First, they set out the three sentences in the order of imposition: 25 years under U.S. law; 10 to 30 years under D.C. law; five years under U.S. law. Turning to 18 U.S.C. § 4205(a), they arrived at 8⅓ years (one-third of 25 years) as the time Chatman-Bey must serve on the first sentence prior to parole eligibility. Next, they followed D.C. Code § 24–203(a) in setting 10 years as the time due under the second sentence (10 to 30 years) prior to parole eligibility. Adding these two minimum terms together, they reached 18⅓ years as Chatman-Bey's pre-parole-eligibility period. Finally, they determined that the third sentence (five years under U.S. law) should be omitted from their computation on the premise that 18 U.S.C. § 4205(a) precludes any U.S. Code sentence from extending the date of parole eligibility beyond 10 years from the beginning of federal custody. Thus, the FPB set Chatman-Bey's parole eligibility date at October 3, 1999, 18⅓ years after he was released by the State of Maryland into the custody of the Attorney General to commence service of his consecutive U.S. Code and D.C. Code sentences.

The government acknowledges that if Chatman-Bey's 10 to 30 year D.C. Code sentence had been imposed before both the 25-year and five-year U.S. Code sentences, Chatman-Bey would be eligible for parole in 10 years (after completion of his minimum D.C. Code term), for in that case, neither U.S. Code sentence would operate to extend the eligibility date. Chatman-Bey maintains that, regardless of sentence order, his parole eligibility date should be June 3, 1991, the point at which he will have served time equal to both the 10-year minimum term imposed for his D.C. Code offenses and the maximum pre-parole-eligibility period stated in 18 U.S.C. § 4205.

## II. Prior Proceedings

This is our second view of Chatman-Bey's parole eligibility case. His petition was before us earlier when the district court, *sua sponte*, and without awaiting

---

**2.** Federal Prison System Policy Statement No. 5050.8 (now superseded by No. 5050.42) served as the basis for calculation of the parole eligibility of D.C.Code offenders at the time Chatman-Bey's parole eligibility date was established. The record does not contain a copy of No. 5050.8, but the government has furnished an earlier policy statement represented to be of the same tenor. *See* Appellees' Second Supplemental Brief, Appendix at 13 (copy of Policy Statement No. 7500.45 in effect before 1976 enactment of 18 U.S.C. § 4205(a)).

service of the *pro se* pleading, ordered the case transferred pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Middle District of Pennsylvania. We vacated the transfer order and returned the case to the district court. *In re Chatman-Bey*, 718 F.2d 484 (D.C. Cir. 1983).

On remand, the government unsuccessfully challenged the district court's jurisdiction. That court rejected the argument that habeas corpus, pursued in the district in which Chatman-Bey is incarcerated, is the sole relief avenue open to him. On the merits, the district court upheld the FBP's parole eligibility calculation. The court declared that "[b]ecause Congress has placed no applicable ceiling for parole eligibility for D.C. offenders, the FBP correctly aggregated the two consecutive minimum sentences to determine [Chatman-Bey's] parole eligibility, without regard to one of his federal sentences." *Chatman-Bey v. Smith*, 594 F.Supp. 718, 722 (D.D.C.1984).[3] Denying Chatman-Bey's motion to alter or amend the judgment, the district court said: "To hold that [Chatman-Bey] is entitled to an earlier parole eligibility date would frustrate the intentions of the Superior Court ... which expressly made [the] D.C. sentence consecutive to the first federal sentence." *Chatman-Bey v. Smith*, 597 F.Supp. 509, 510 (D.D.C.1984).

In the discussion that follows, we turn first to the government's jurisdictional objection, and then to the merits of Chatman-Bey's claim.

### III. Discussion

#### A. *Jurisdiction*

■ Chatman-Bey styled his opening pleading a petition for mandamus or habeas corpus. The government urges that ha-

beas is available only in a court with authority over the petitioner's custodian, and that mandamus is unavailable to Chatman-Bey in any court because an adequate remedial route is open to him—he can petition in the district of his incarceration for a writ of habeas corpus.[4] Counsel appointed for Chatman-Bey on appeal suggests that this action is most appropriately regarded as neither a habeas nor a mandamus petition, but as one invoking the court's general federal question jurisdiction under 28 U.S.C. § 1331, and requesting declaratory relief pursuant to 28 U.S.C. § 2201. We agree and believe this case, initiated by a prisoner *pro se*, a proper one in which to deem the pleadings amended to show jurisdiction. *See* 28 U.S.C. § 1653 (authorizing amendment of pleadings in trial or appellate court to cure defective allegations of jurisdiction).

Of course, a change in the label pinned to a jurisdictional allegation would not aid appellant if habeas in the place of his imprisonment were indeed his sole remedy. But, as recently clarified by this court, there is jurisdiction in this forum to entertain a claim of the type Chatman-Bey states.

In *In re United States Parole Commission*, 793 F.2d 338 (D.C.Cir.1986), the complainant, Stephen Pearson, challenged the Parole Commission's upgrading of offense-severity ratings for a number of crimes, including the one for which Pearson was sentenced. If Pearson prevailed on his claims, "he possibly could be considered for parole under the earlier guidelines, which set a presumptive parole date of 20 to 26 months, instead of 52 to 64, from the date his incarceration began." *Parole Commission*, 793 F.2d at 341. The Commission observed that the relief Pearson ultimately sought was an earlier parole date. That meant, the Commission urged, that Pear-

---

3. In so ruling, the district court relied on our decision in *Bryant v. Civiletti*, 663 F.2d 286, 290 (D.C.Cir.1981). *See infra* at 994.

4. The government is not precluded from attacking jurisdiction by our earlier decision in *In re Chatman-Bey*, 718 F.2d 484 (D.C.Cir.1983). That decision tersely observed that Chatman-Bey, in asking only for "earlier eligibility for

parole consideration," was not challenging "the fact or duration of his confinement." *Id.* at 487 n. 7. However, we then ruled on a *pro se* petition which the district court ordered to be transferred without awaiting service on the defendants. The government thus had no prior opportunity to be heard on the issue.

son was actually challenging the "fact or duration" of his confinement. Under the Supreme Court's ruling in *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Commission concluded, when the relief sought is entitlement "to immediate or speedier release from imprisonment," the sole remedy is a writ of habeas corpus. *See Preiser*, 411 U.S. at 500, 93 S.Ct. at 1841–42.

We acknowledged in *Parole Commission* that under *Preiser*, habeas corpus in the jurisdiction of confinement is generally "the exclusive remedy for a prisoner attacking the 'fact or duration' of confinement and demanding 'immediate or speedier release' from custody." *Parole Commission*, 793 F.2d at 344–45; *accord, Monk v. Secretary of Navy*, 793 F.2d 364 (D.C. Cir.1986); *Guerra v. Meese*, 786 F.2d 414 (D.C.Cir.1986). But we pointed out that a litigation success for Pearson "would not automatically terminate or shorten the period of his confinement." *Parole Commission*, 793 F.2d at 348. Accordingly, we held Pearson was "not restricted to habeas corpus, but may proceed with his action for declaratory and injunctive relief." *Id.*

Parole eligibility, after all, simply means consideration for release. Such eligibility does not "entitle" the prisoner to release even one day earlier than his full term or aggregate consecutive terms. *See Goode v. Markley*, 603 F.2d 973, 977 n. 5 (D.C. Cir.1979) (eligibility for parole "in no way means [one] would be entitled to release"). Parole eligibility is thus unlike good-time credit, which generally does operate to reduce the term of a sentence. *See Williams v. Ward*, 556 F.2d 1143, 1150–52 (2d Cir.) (request for new parole hearing held a remedy available outside habeas corpus), *cert. dismissed*, 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977).[5] *See also Parole Commission*, 793 F.2d at 343–44 & n. 48.

*Parole Commission* differs from Chatman-Bey's case by one degree. Invalidation of the guideline Pearson challenged would not assure him an earlier eligibility date, for the Commission "could promulgate a new guideline," or "act[] outside the guidelines," or "exercise its discretion without the benefit of any guideline at all." *Id.* at 346. But we think the critical distinction is between a claimed *entitlement* to immediate or speedier release from imprisonment and a prayer for relief that could do no more than brighten prospects, *i.e.*, improve one's chances, for earlier release.

We note finally that holding a forum in the District of Columbia open to Chatman-Bey hardly makes this District a mecca for all manner of federal prisoner complaints. Chatman-Bey's case is singularly suitable for adjudication here. Appellant mounts no attack on the validity of his convictions or the consecutive sentences imposed. *Cf. Monk v. Secretary of Navy, supra* (habeas in district of incarceration is generally the exclusive method for collaterally attacking a conviction). His claim, which presents no factual dispute, centrally involves the interaction of U.S. and D.C. legislative provisions. It would be curious indeed if the allocation of judicial business among federal courts were so arranged that the U.S. Code-D.C. Code interaction here at issue had to be aired outside the District.

### B. *The Merits*

We describe first the different methods now employed by the FBP to calculate parole eligibility dates for 1) prisoners with consecutive sentences imposed for U.S. Code offenses, and 2) prisoners with consecutive sentences of the same aggregate length, but separately imposed for U.S. Code and D.C. Code offenses. We then explain why we find irrational the FBP's approach to parole eligibility date calculation for prisoners in the latter category. Thereafter, we set out the method that

---

**5.** As Judge Friendly stated in *Williams, supra:*
Although the relief sought by petitioner may improve his chances for parole, the question of his release and of the length of his confinement still lies within the sound discretion of the board, unlike *Preiser* where the restoration of good-conduct-time credits would have resulted automatically in the shortening of the prisoners' confinement.
*Id.* at 1150.

reasonably accommodates the pertinent U.S. Code and D.C. Code prescriptions.

Taking Chatman-Bey's case as our illustration, if his consecutive sentences (25 years, 10 to 30 years, five years) had all been imposed for U.S. Code offenses, the FBP would have aggregated the maximum terms into a single sentence, as indicated in Parole Commission regulations on computation of time of eligibility for release on parole:

> When multiple sentences are aggregated by the Bureau of Prisons pursuant to 18 U.S.C. 4161 and 4205, such sentences are treated as a *single aggregate sentence* for the purpose of every action taken by the Commission pursuant to these rules, and the prisoner has a single parole eligibility date as determined by the Bureau of Prisons.

U.S. Department of Justice, U.S. Parole Commission, 28 C.F.R. § 2.5 (1985) (emphasis added).[6]

To arrive at the parole eligibility date on a 60-year term, FBP would turn to 18 U.S.C. § 4205(a), set out *supra* at 988, which first places eligibility at one-third of the total time imposed (in this case, 20 years), but then sets a 10-year ceiling. That 10-year ceiling, it is not disputed, would apply if Chatman-Bey were incarcerated for a string of U.S. Code offenses, but no D.C. Code offense. *See* Second Supplemental Brief for Appellees at 5 (FBP "interprets 18 U.S. Code § 4205(a) to create a ten year cap on the ability of any U.S. Code sentence or sentences to extend the period of parole ineligibility"). *See also United States v. Fountain*, 768 F.2d 790, 799 (7th Cir.1985) ("federal prison and parole authorities, in an interpretation of section 4205(a) that has not ... been questioned, refuse to 'stack' beyond 30 years [federal] prison sentences of any length—even when imposed consecutively—for purposes of determining the date of eligibility for pa-

role"). Although the likelihood of parole at the 10-year mark might be slight where the aggregate maximum sentence is 60 years, "the denial of parole would be based on release guidelines of the U.S. Parole Commission, not on legal ineligibility as determined by the Bureau of Prisons." Second Supplemental Brief for Appellees at 6.

Section 4205(a) calls for the above-described approach "except as otherwise provided by law," and the government contends that D.C. Code §§ 24–203(a), –204(a), set out *supra* at 988–989, do "otherwise provide." Those sections require full service of the minimum sentence imposed, the government points out. Plainly, a 10-year cap would be incompatible with that stricture if the minimum sentence imposed for a D.C. Code offense were, for example, 20 years. Therefore, the government concludes, the 10-year capped aggregation approach used in calculating parole eligibility for U.S. Code offenders cannot be employed when a D.C. Code sentence is implicated. To give full effect to the D.C. Code term, the government maintains, the minimum time on the D.C. sentence must be calculated separately. In Chatman-Bey's case, that means a separate computation for the 25-year U.S. Code sentence, to arrive at the one-third mark ($8\frac{1}{3}$ years) specified in 18 U.S.C. § 4205(a), and then, addition of the 10-year minimum for the consecutively imposed D.C. Code offense, to yield an $18\frac{1}{3}$ year period of parole ineligibility.

As earlier observed, *see supra* at 988, the approach the government defends causes parole eligibility to turn on the chronological order of the U.S. Code and D.C. Code sentences. If the D.C. Code sentence had been imposed first rather than second (significantly, Chatman-Bey's D.C. Code offense was committed in November 1973, prior to his April 1974 U.S. Code offense), Chatman-Bey would have

---

6. This single aggregate sentence treatment is also reflected in a new provision, 18 U.S.C. § 3584(c), effective November 1, 1986, added by the Sentencing Reform Act of 1984, Pub.L. No. 98–473, 98 Stat. 2000–2001. That provision states:

Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

been eligible for parole at the 10-year mark, because 18 U.S.C. § 4205(a), as interpreted by the FBP, would have stopped the consecutive U.S. Code sentences from extending the parole ineligibility period beyond 10 years. On the other hand, if the D.C. Code sentence had been imposed last, after the 25-year and five-year U.S. Code sentences, Chatman-Bey's parole ineligibility period would have endured, under the FBP's calculation method, for 20 years.[7]

The variations produced under this calculation method are anomalous. They bear no necessary relationship to the character of the offenses or the offender.[8] The anomaly is heightened when it is recalled that

> [v]iolations of the District of Columbia Code and violations of the United States Code are all crimes against a single sovereign, namely, the United States.... All crimes prosecuted under the District of Columbia Code are maintained in the name of the United States.... Individuals convicted of crimes under either Code are committed to the custody of the Attorney General of the United States.... District of Columbia Code offenders [like

Chatman-Bey] properly incarcerated in federal penitentiaries are subject to parole review before the United States Parole Commission rather than the District of Columbia Parole Board.

*Goode v. Markley*, 603 F.2d at 976 (citations omitted).

Mindful that "[s]tatutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible," *American Tobacco Company v. Patterson*, 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982), we reject the interpretation of the interaction of 18 U.S.C. § 4205(a), and D.C. Code §§ 24–203(a), –204(a) tendered by the government; instead, we read the relevant legislative prescriptions to give full effect to the sentence aggregation approach indicated by 18 U.S.C. § 4205(a), while at the same time obligating prisoners to serve at least the minimum term or terms imposed under the D.C. Code.[9] Thus, the FBP should follow a uniform, full aggregation approach in calculating parole eligibility for persons incarcerated in federal penitentiaries. Whether consecutive sentences are imposed solely under the U.S. Code, or under the federal

7. The ineligibility period, under the scheme the government defends, would be 11⅔ years if the five-year U.S.Code sentence were imposed first, the D.C.Code 10 to 30 year sentence next, and the 25-year U.S.Code sentence last.

8. The district court considered the FBP position proper because it believed that an earlier parole eligibility date for Chatman-Bey "would frustrate the intentions of the Superior Court of the District of Columbia, which expressly made his D.C. sentence consecutive to the first federal sentence." *Chatman-Bey v. Smith*, 597 F.Supp. 509, 510 (D.D.C.1984). With similar plausibility, it might be urged that aggregation of U.S. Code offenses for parole eligibility computation purposes could operate to frustrate the intentions of federal judges who impose consecutive sentences. Nonetheless, the Parole Commission has expressly directed full aggregation of U.S. Code sentences in its regulations, 28 C.F.R. § 2.5 (1985), and Congress has accepted the practice in new 18 U.S.C. § 3584(c), set out *supra* note 6.

9. While the government does not make the point explicitly, we recognize that the FBP's method of calculating parole eligibility for persons serving consecutive U.S.Code and D.C.Code sentences could be viewed as a statutory con-

struction matter reviewable in court under the constraints stated in *Chevron, U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We find that Congress did not advert specifically to the U.S. Code-D.C.Code interaction question at hand. Therefore, the court's task is to determine whether the FBP's methodology "represents a reasonable accommodation of conflicting policies." *Id.* at 845, 104 S.Ct. at 2783 (quoting *United States v. Shimer*, 367 U.S. 374, 382, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)). We answer that inquiry in the negative. Instead of rationally accommodating the U.S.Code and D.C.Code prescriptions, the FBP's calculation method creates unnecessary and unseemly anomalies in parole eligibility inconsistent with Congress' intention that "parole ha[ve] both the fact and appearance of fairness to all." S.Rep. No. 369, 94th Cong., 2d Sess. 19 (1976); U.S. Code Cong. & Admin.News 1976, pp. 335, 340. *Chevron* does not countenance unreasonable agency interpretation of this order. *See, e.g., FAIC Securities, Inc. v. United States*, 768 F.2d 352, 363–64 (D.C.Cir.1985); *Natural Resources Defense Council v. Herrington*, 768 F.2d 1355, 1369–83 (D.C.Cir.1985).

**994**

Code and the D.C. Code, all should be added together to arrive at a single aggregate sentence. But because the D.C. Code "otherwise provides," the 10-year cap indicated in 18 U.S.C. § 4205(a) would not be dispositive when a D.C. Code sentence is implicated. Rather, the prisoner would remain ineligible for parole until he completed service of time equivalent to the minimum D.C. Code sentence or sentences.

For example, a prisoner serving a U.S. Code sentence of five years, and two consecutive D.C. Code sentences of 10 to 30 years, would become eligible for parole 20 years—not 21⅔ years—after service of the sentences commenced. In Chatman-Bey's case, because the D.C. Code minimum sentence involved is 10 years, not longer, the 10-year ceiling in 18 U.S.C. § 4205(a) would block "the ability of any U.S. Code sentence or sentences to extend the period of parole ineligibility." *See* Second Supplemental Brief for Appellees at 5. Following this method, which accommodates the aggregation approach indicated in 18 U.S.C. § 4205(a), and the minimum term prescriptions of the D.C. Code, Chatman-Bey becomes parole eligible on June 3, 1991.

The district court accepted the government's suggestion that our opinion in *Bryant v. Civiletti*, 663 F.2d 286, 290 (D.C. Cir.1981), confirms the approach FBP currently takes to persons serving consecutive U.S. Code and D.C. Code terms. *See Chatman-Bey v. Smith*, 594 F.Supp. at 722. But the panel in that case had no cause to, and did not, focus on the precise issue we frontally decide here. *Bryant* involved a *pro se* petitioner incarcerated in Lewisburg pursuant to 1) three federal convictions in our district court with consecutive terms aggregating 18 to 54 years, 2) a further conviction in the Eastern District of Virginia, and 3) two consecutive D.C. Code convictions each carrying a life sentence with parole eligibility "only after expiration of twenty years" from the date service of the sentence commences. *See* D.C. Code § 22–2404 (1981). These D.C. sentences were to run consecutively to the 18 to 54 year federal sentences. Bryant claimed he was parole eligible, under 18 U.S.C. § 4205(a), 10 years from the date of his incarceration.

The *Bryant* panel summarily affirmed the district court's dismissal of the *pro se* petition. We agree that Bryant's claim was frivolous. Under the approach we take, Bryant would be required to serve in full the time set in the two D.C. sentences, *i.e.*, 40 years, before becoming eligible for parole. But the *Bryant* panel, when it rejected the petition, did comment: "Under the law, ... Bryant will not even be *eligible* for *consideration* for parole on these offenses until well into the next century; *i.e.*, until 50 years after his sentence began to run in 1968, *i.e.*, until 2017." *Bryant*, 663 F.2d at 290 (emphasis in original). The panel thus tacked 40 years under the D.C. sentences to 10 years under the consecutive federal sentences.

■ To reject Bryant's plea, it sufficed to say that the 10-year ceiling in 18 U.S.C. § 4205(a) did not override D.C.Code instructions that Bryant serve, at a minimum, 40 years. Bryant's plea did not call for a choice between 40 years and 50 years, and that issue was not specifically briefed. With the benefit of full briefing, we hold that 1) the same full aggregation approach must be used in calculating the parole eligibility date of persons incarcerated in federal penitentiaries, whether under U.S.Code sentences or both U.S.Code and D.C.Code sentences, but that 2) persons sentenced for D.C.Code offenses must serve time at least equal to the minimum D.C.Code term or terms before they may be considered for parole.[10]

## CONCLUSION

The Federal Bureau of Prisons properly recognized its obligation to calculate federal parole eligibility in a manner that does

---

**10.** This holding, because it arguably conflicts with a prior opinion of a panel of this court, has been reviewed and approved by the court en banc, and thus constitutes the law of the circuit.

not dishonor the minimum sentence provisions of the D.C.Code. But the Bureau incorrectly assumed that the only way to credit D.C.Code minimum pre-parole terms was to use a methodology that produces arbitrary results—large disparities in parole eligibility dates based on the chronological order in which sentences were imposed and not on factors that bear directly on suitability for release. The interpretation of 18 U.S.C. § 4205(a) we adopt in this opinion achieves evenhanded results and, at the same time, gives due credit to D.C.Code provisions mandating minimum pre-parole periods of incarceration. Our decision requires a parole eligibility date of June 3, 1991, rather than October 3, 1999, for Chatman-Bey. But we observe again, in conclusion, that a parole eligibility date merely sets the time a prisoner qualifies for consideration for parole and in no way indicates any entitlement to release before full sentences have been served.[11]

For the reasons stated, the judgment of the district court is reversed and the case is remanded with instructions to direct defendants to recompute appellant's parole eligibility date in the manner required by this opinion.

*It is so ordered.*

11. The Sentencing Reform Act of 1984, Pub.L. 98–473, 98 Stat. 1987, prospectively eliminates parole, *id.* at § 218(a)(5), and establishes for the future a system of determinate sentencing. *Id.* at § 212(a)(2). As provided in the Sentencing Reform Amendments Act of 1985, Pub.L. 99–217, 99 Stat. 1728, parole has been eliminated for persons convicted after November 1, 1987. Pub.L. 99–217 at § 4. That legislation also abol-

ishes the United States Parole Commission as of November 1, 1991, and directs the Commission, in advance of that date, to set a release date for all prisoners within its jurisdiction. *Id.* at § 235(b)(3). Today's decision may advance the time Chatman-Bey's release date will be set, and it will establish June 3, 1991 rather than October 3, 1999 as the earliest time at which he could be released.