**Timothy THOMAS, Petitioner–Appellant,**

v.

**Edward BRENNAN, Warden, Federal Correctional Institution, Oxford, Wisconsin, Respondent–Appellee.**

No. 91–1063.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 6, 1991.

Decided April 7, 1992.

As Amended April 8, 1992.

Rehearing Denied June 10, 1992.

Keith A. Findley (argued), Office of the State Public Defender, Madison, Wis., for petitioner-appellant.

Christa A. Reisterer, Asst. U.S. Atty., Madison, Wis., Michael A. Stover (argued), U.S. Parole Com'n, Chevy Chase, Md., for respondent-appellee.

Before CUDAHY and FLAUM, Circuit Judges, and ROSZKOWSKI, Senior District Judge.[*]

FLAUM, Circuit Judge.

Petitioner Timothy Thomas is one of approximately 200 prisoners in federal custody serving "mixed sentences" for committing separate offenses under the United States Code and the District of Columbia Code. This case involves the interaction of federal and D.C. parole eligibility provisions as they apply to Thomas. The United States Parole Commission ("the Commission") attempted to accommodate both sets of provisions in an interim rule, 28 C.F.R.

---

[*] The Honorable Stanley J. Roszkowski, of the Northern District of Illinois, sitting by designation.

§ 2.66, applied in the present action to set Thomas' parole hearing for the D.C. portion of his sentence in 1995. Thomas challenged the Commission's determination in a suit under 28 U.S.C. § 2241, but the district court rejected his claims. *Thomas v. Brennan*, No. 88-C-583-S (W.D.Wis. Dec. 5, 1990) (*Thomas II*). For the following reasons, we affirm in part and reverse in part.

## I.

Thomas is currently housed in the Federal Correctional Institution at Oxford, Wisconsin.[1] His aggregate prison term of 79 years, 9 months, and 18 days consists of three individual sentences, listed in order of imposition: (1) a 5–15 year sentence under the D.C.Code for armed robbery and assault with a deadly weapon; (2) a 35 year sentence under the U.S.Code, concurrent to the 5–15 year D.C.Code sentence, for armed bank robbery and kidnapping; and (3) a 13–40 year sentence under the D.C.Code, consecutive to the other terms, for armed robbery. We refer to his sentence as a "mixed sentence" because it is comprised of terms for both federal and D.C. crimes. Thomas' incarceration commenced on August 21, 1970.[2]

Before proceeding to the facts of this case, we outline some rudimentary principles. Parole eligibility[3] for pre-Sentencing Guidelines federal sentences is governed by 18 U.S.C. § 4205(a) (1982),[4] under which a prisoner is eligible for parole after serving one-third of a sentence 30 years or less, or 10 years of a sentence greater than 30 years, "except to the extent otherwise provided by law." Consequently, were Thomas convicted only of his federal crimes, which carry a 35 year sentence, he would be eligible for parole after serving 10 years. Parole eligibility for D.C. sentences is governed by D.C.Code § 24–203(a), which provides that a prisoner is eligible for parole after serving the minimum sentence of a term. Thus, were Thomas sentenced only to the 13–40 year D.C. term for armed robbery, he would be eligible for parole in 13 years.

This is all very simple, but complications arise when D.C.Code offenders are housed in federal institutions. The D.C. Board of Parole has no jurisdiction over these prisoners because they are confined in federal facilities; however, D.C.Code § 24–209 gives the Commission "the same power and authority" as the D.C. Board of Parole would have had over such prisoners were they housed in a D.C. facility. *See Johnson v. Williford*, 821 F.2d 1279, 1284 (7th Cir.1987); *Brewer v. Swinson*, 837 F.2d 802, 805 (8th Cir.), *vacated as moot*, 837 F.2d 806 (8th Cir.1988). We previously in-

---

1. D.C.Code § 24–425 permits the United States Attorney General to assign D.C.Code offenders to serve their sentences in federal institutions rather than in institutions maintained by the District. *See Brewer v. Swinson*, 837 F.2d 802, 803 (8th Cir.), *vacated as moot*, 837 F.2d 806 (8th Cir.1988). The same provision presumably applies to prisoners, like Thomas, who have committed both D.C. and federal offenses.

2. The particular sequence of Thomas' crimes is more complicated than our synopsis indicates. Thomas was originally housed at the District of Columbia's prison facility at Lorton, Virginia, to serve the 5–15 year D.C.Code sentence for a 1968 robbery of a high school classroom. In August 1972, he robbed a jewelry store in D.C. while on a part-time pass from Lorton. Thomas escaped from Lorton in February 1973, and traveled to several parts of the country, including Michigan, where he committed the federal bank robbery and kidnapping offenses in October 1974. He was captured soon thereafter, and in June 1975 was convicted by the Eastern District of Michigan for the federal offenses. In

May 1976 he was convicted by the D.C. Superior Court for the 1972 jewelry store robbery. Both parties, without explanation, treat Thomas' time on escape status from Lorton as time served.

3. Parole eligibility is different from parole suitability. The fact that a prisoner is eligible for parole means only that the paroling authority must consider his application for parole under the relevant parole guidelines. The paroling authority's ultimate decision is a matter of parole suitability (i.e., whether the prisoner is actually entitled to release under the guidelines). *See, e.g., United States v. Fountain*, 840 F.2d 509, 523 (7th Cir.1988), *cert. denied*, 488 U.S. 982, 109 S.Ct. 533, 102 L.Ed.2d 564 (1989).

4. Although Congress repealed § 4205, effective November 1, 1987, the provision remains applicable to Thomas' sentence, which was imposed prior to implementation of the Sentencing Guidelines. *See* Sentencing Reform Act of 1984, Pub.L. No. 98–473, 98 Stat.1987, §§ 218(a)(5); 235(b)(1).

terpreted § 24–209 to require the Commission to apply D.C. parole laws and regulations when making parole decisions for prisoners serving D.C. terms in federal prison. *Johnson*, 821 F.2d at 1288; *Ashby-Bey v. Meese*, 821 F.2d 1288 (7th Cir. 1987); *Sullivan v. Freeman*, 944 F.2d 334, 338 (7th Cir.1991) (dicta); *accord Brewer*, 837 F.2d at 805; *Walker v. Luther*, 830 F.2d 1208, 1214–15 (2d Cir.1987). Thus, for example, were Thomas sentenced only to the 13–40 year D.C. term for armed robbery and housed in a federal prison, he would be eligible for parole in 13 years, and the Commission would be required to employ D.C. law to determine his parole suitability.

Matters are complicated further for federal inmates serving mixed sentences. It is undisputed that the separate D.C. and federal components of Thomas' mixed sentence must be "aggregated" for the purpose of calculating his parole eligibility date. *See* 54 Fed.Reg. 27841 (1989) (supplementary information for 28 C.F.R. § 2.66); *Thomas II*, slip op. at 7; *see also Moss v. Clark*, 886 F.2d 686, 692 (4th Cir. 1989); *Chatman–Bey v. Meese*, 797 F.2d 987, 994 (D.C.Cir.1986), *aff'd on reh'g*, 864 F.2d 804 (D.C.Cir.1988) (en banc) (considering only jurisdictional issue). The critical issue here is *how* "aggregation" is to be accomplished. We observe at the outset that whatever "aggregation" means, it is partial rather than complete. If it were complete, the Commission would sum the D.C. and federal portions of a mixed sentence, and then apply only one set of parole regulations to the combined term. But that is not the way things work. Rather, the Commission must apply D.C. parole regulations to the D.C. portion of mixed sentences and federal parole regulations to the federal portion. *See* 28 C.F.R. § 2.66(b). The problem, given this regime, is how to accord due respect to both sets of parole provisions *while at the same time* treating the mixed sentence as an aggregate term.

This is easier said than done, as the facts of this case attest. The Commission initially determined that Thomas would first become eligible for parole on August 22, 1993, after serving 23 years in prison. It reached this result by adding together the minimum terms for each of his three individual sentences. The first sentence carried a minimum term of 5 years; the second, 10 years; and the third, 13 years. Since the first two sentences run concurrently, their combined minimum is 10 years; adding 13 years to that makes 23 years. Thomas challenged this determination, and the district court granted him relief, holding that his parole eligibility date should have been set at August 22, 1988, after he served 18 years. *Thomas v. Brennan*, No. 88–C–583–S (W.D.Wis. Aug. 23, 1988) (*Thomas I*).

The court reasoned that the Commission's method of calculating Thomas' parole eligibility date was flawed because it would fluctuate according to the chronological order in which his individual federal and D.C. sentences were imposed. If, for example, the federal sentence were imposed third (after the two D.C. sentences) rather than second. Thomas' parole eligibility date would have been 18 years after his incarceration commenced rather than 23. The 5–15 year D.C. sentence, followed by the 13–40 year D.C. sentence, would leave a parole eligibility date of 18 years. The 35 year federal sentence *would* add 10 years to this but for 18 U.S.C. § 4205, which forbids the use of any federal sentence to extend a prisoner's parole eligibility date more than 10 years following the initiation of federal custody. *Thomas I,* slip op. at 3; *see also Chatman–Bey*, 797 F.2d at 989. Consequently, the federal sentence, if imposed last, falls out of the picture for purpose of determining the parole eligibility date, which, being based solely upon the two D.C. sentences, would remain 18 years. Put the federal sentence second, however, and the parole eligibility date is 23 years.

As a result of this potential disparity, *Thomas I* concluded that the Commission's method of calculating the parole eligibility date for mixed sentences was irrational. In its stead, the court essentially adopted the method employed by the D.C. Circuit in *Chatman–Bey*, 797 F.2d at 993–94: the

parole eligibility date falls after the expiration of (1) one-third the aggregate term for terms less than 30 years, or (2) 10 years for aggregate terms 30 years or greater, unless the combined D.C. minimum sentence is greater than 10 years, in which case the date is the D.C. minimum sentence. Under this scheme, Thomas' aggregate sentence of 79–plus years mandates parole eligibility in 18 years (the combined minimum term of his two D.C. sentences), rather than 23 years as originally determined by the Commission.

*Thomas I* solved one part of the "aggregation" puzzle—setting Thomas' initial parole eligibility date. It left open, however, what the Commission was required to do on that date. That is the precise issue in the present case, to whose facts we now return.

## II.

The Commission, as directed by *Thomas I*, conducted a parole hearing on November 16, 1988, retroactive to August 22, 1988. The hearing panel issued a recommendation, the Regional Commissioner rendered its decision, and Thomas appealed to the Commission's National Appeals Board, which vacated the Commissioner's decision. Subsequent to the vacatur, the Commission published regulations, codified at 28 C.F.R. § 2.66, governing parole eligibility and suitability for prisoners serving mixed sentences.

These regulations attempt to meld the federal and D.C. parole provisions through a three-step algorithm. The process commences on a prisoner's initial parole eligibility date, calculated in a manner prescribed by *Chatman–Bey* and applied in *Thomas I*. First, the Commission applies the federal parole guidelines, 28 C.F.R. § 2.20, to determine a parole suitability date for the federal portion of the sentence; the time between the initiation of custody and this date is called the prisoner's "federal time." The guidelines actually yield a range (much like the Sentencing Guidelines) from which the Commission may depart upward or downward. *See* 28 C.F.R. § 2.66(c)–(d). Second, the Commission cal-

culates the combined minimum term of the D.C. offenses, *id.* § 2.66(e), and then determines under § 2.66(f) how much of that term should run concurrently (or consecutively) with the "federal time." Third, after the prisoner serves the federal time and the non-concurrent (or consecutive) portion of the D.C. minimum term, the Commission holds a hearing to apply the D.C. parole suitability guidelines to the D.C. portion of the aggregate term. *Id.* § 2:66(f)(4), (g).

The Commission applied § 2.66 to Thomas' sentence after the National Appeals Board vacated the Regional Commissioner's original decision. Thomas entered prison on August 21, 1970, and his initial parole eligibility date was August 21, 1988. The federal parole guidelines yielded a range of 78–116 months for the federal portion of his sentence. However, in light of the particular nature of Thomas' offenses, the Commission decided to depart upward to 280 months; his "federal time" consequently expires on December 21, 1993. (Thomas challenges this departure, but we will assume for the moment that it was valid, and take up the question in the next section.) Thomas' combined D.C. minimum term is 18 years, but the Commission decided, pursuant to § 2.66(f), to run all but 24 months of that concurrently with his 280 months of "federal time." These determinations rendered Thomas eligible for parole on the D.C. portion of his aggregate term on December 21, 1995; the Commission plans to hold a parole suitability hearing, at which it will apply the D.C. parole guidelines, shortly before this date.

The problem with the regulations, Thomas asserts, is that they postpone application of the D.C. parole guidelines until 1995, about seven years after his initial parole eligibility date of August 21, 1988. This, he maintains, denies him "meaningful consideration for parole" for his D.C. offenses, and disaggregates what all agree should be an aggregate term. Thomas claims that he was entitled to a simultaneous application of the D.C. and federal parole guidelines to the respective portions of his aggregate term on his initial parole eligibility date. In response, the Commission contends that

§ 2.66 steers a reasonable middle course between two conflicting regulatory regimes (the D.C. and federal parole regulations), and therefore is entitled to some degree of deference. *See Citizens to Save Spencer County v. United States EPA*, 600 F.2d 844, 872 (D.C.Cir.1979). As noted above, this dispute boils down to the meaning of "aggregation." Due regard for both regimes is the watchword of our analysis; while the Commission is entitled to deference, it may not shunt aside one regime while paying too much heed to the other. Is it enough, as the Commission argues, that the federal parole suitability guidelines be applied on Thomas' initial parole eligibility date, leaving application of the D.C. parole guidelines to 1995? Or, as Thomas argues, does "aggregation" mean that the Commission must simultaneously apply the D.C. and federal parole guidelines on the initial parole eligibility date?

■ As it turns out, both parties reach a bit too far. We agree with Thomas that the regulations, in some circumstances, work an invalid delay in the Commission's application of the D.C. parole guidelines to the D.C. portion of a mixed sentence. The problem lies with the second step of the three-step algorithm, in which the Commission determines the amount of the D.C. minimum term that is to be served consecutively with the "federal time." Section 2.66(f) directs the Commission to employ the Multiple Separate Offenses Table of the federal parole guidelines, 28 C.F.R. § 2.20, in making this determination.[5] This use of a federal standard[6] to postpone application of the D.C. parole guidelines to the D.C. portion of a mixed sentence clearly contravenes our holding in *Johnson*, 821 F.2d at 1284, which requires the Commission to apply D.C. parole laws to D.C.Code offenses. The district court held, and the Commission argues here, that *Johnson* is inapposite because it dealt only with D.C.Code offenses, not mixed sentences. *Thomas II*, slip op. at 7; Resp.Br. at 10. But, as Thomas observes, *Johnson* in fact involved a mixed sentence. *See Johnson*, 821 F.2d at 1288 n. 5. In any event, the Commission's argument is at odds with its own recognition that it must apply the D.C. regulations to the D.C. portion of mixed sentences. *See* 28 C.F.R. § 2.66(b) ("*Basic policy*. The Commission shall apply the guidelines at § 2.20 to the prisoner's U.S.Code crimes, and the guidelines of the [D.C.] Board of Parole to the prisoner's D.C.Code crimes."); 54 Fed.Reg. 27841 (1989) (with regard to mixed sentences,

---

**5.** According to the Commission, "accountability for the seriousness of the D.C. crimes is not automatically concurrent or consecutive with the time required by the federal guidelines for the federal crimes, but may be concurrent, or partly consecutive, according to the formula established by the ... Table." 54 Fed.Reg. 27842 (1989) (background to § 2.66).

**6.** In the background materials to § 2.66, the Commission contends that its use of the Multiple Separate Offenses Table in § 2.20 does not substitute federal standards for D.C. standards. *See* 54 Fed.Reg. 27842 (1989) (regulation "should not be construed as a substitution of federal punishment for the D.C. crime"). It argues that while employing the Table requires one to convert the D.C. minimum term into an equivalent federal offense severity rating, that rating directly reflects the D.C. minimum term and is not influenced by federal parole policies. This last assertion is true, but we would be inclined to find that other aspects of calculating time under the Table are wholly federal; in other words, § 2.66(f) delays application of the D.C. guidelines, and hence delays parole eligibility for the D.C. portion of a mixed sentence, at

least in part on the basis of federal law. In any event, we need not explore this here, because the Commission waived this entire argument by advancing it neither in the district court nor on appeal. Even if the Commission advanced this argument and were correct, the regulation would be invalid for another reason, at least as to prisoners, like Thomas, (1) whose aggregate term is over 30 years and whose combined D.C. minimum term is greater than 10 years, and (2) whose "federal time" expires after the initial parole eligibility date. *Chatman–Bey, supra*, provides that the initial parole eligibility date for these prisoners is the D.C. minimum sentence, which is equivalent of the offense severity component of the D.C. parole guidelines. The Commission contends that § 2.66(f) employs the same offense severity rating to extend consideration under the D.C. guidelines past the expiration of the "federal time," and hence the initial parole eligibility date. Even were that the whole story, § 2.66(f) would still be invalid because the D.C. offense severity rating was already reflected in setting that date, and the Commission may not "double count" that rating to postpone any further parole consideration under the D.C. guidelines.

"the task for the Commission has been to devise a policy by which federal parole laws and regulations can be applied to the federal crimes and sentences, and D.C. parole laws and regulations can be applied to the D.C. crimes and sentences, all within the framework of a single aggregate sentence") (background to § 2.66).

The only possible distinction we see between *Johnson* and the present case is that *Johnson* required the Commission to apply D.C. parole regulations when determining a prisoner's *suitability* for parole, while in this case Thomas asks that we require the Commission to apply those regulations in determining when he is *eligible* for parole consideration. But this distinction is illusory. As discussed above, D.C.Code § 24–209, upon which *Johnson* was based, provides that the Commission shall exercise "the same power and authority" over D.C.Code offenders as the D.C. Board of Parole would have had were such prisoners housed in a D.C. facility. A plain reading of the statute suggests that it mandates not only the guidelines the Commission must use when determining parole suitability, but also the standards that set the time at which it must apply those guidelines. Were the opposite true, *Johnson* would lose much of its force; the fact that the Commission is required to apply D.C. parole suitability guidelines would mean little if it were permitted to delay their application in accordance with a federal regulation. Accordingly, § 2.66(f) is invalid to the extent that it employs a federal regulation, 28 C.F.R. § 2.20, to determine when the Commission must consider a prisoner eligible for parole on the D.C. portion of a mixed sentence. Due regard for the D.C. parole regime requires as much.

■ Does this mean that the Commission must apply the D.C. parole suitability regulations to the D.C. portion (while simultaneously applying the federal parole suitability regulations to the federal portion) on the initial parole eligibility date? In most cases, the answer is yes. D.C.Code §§ 24–203(a) and 24–204(a) provide that a prisoner is entitled to a parole eligibility hearing at that time (actually, shortly before that

time). *Johnson* and D.C.Code § 24–209 require the Commission to comply with these provisions.

■ However, given the dual regimes, we carve an exception for prisoners, like Thomas, whose "federal time" extends beyond the initial parole eligibility date. Granted, were we to find that Thomas was entitled to a D.C. hearing on August 21, 1988, we could order the Commission to hold a D.C. hearing retroactive to that date, with retroactive annual rehearings through the present. Although this solution would appear to accord Thomas some incremental benefit, *see* D.C.Mun.Regs. tit. 28, § 204.19 and App. 2–1 (initial parole guidelines); *id.* § 204.21 and App. 2–2 (parole rehearing guidelines), we decline to impose it upon the Commission. Thomas' "federal time" expires on December 21, 1993, pursuant to the federal parole regulations. He must therefore remain in prison until that date, even if under the D.C. regulations he would be considered suitable for earlier release. Due regard for the federal scheme precludes us from requiring the Commission to apply the D.C. regulations to the D.C. portion of a mixed sentence while the prisoner has yet to serve out the federal portion.

Our conclusion is buttressed by the D.C. Circuit's decision in *Chatman–Bey v. Meese, supra,* which Thomas embraces. *Chatman–Bey,* recall, established a method for setting an initial parole eligibility date for prisoners serving mixed sentences. *See* p. 616 *ante.* Assume that a prisoner's aggregate term is 27 years, comprised of one lengthy federal term and a brief D.C.Code sentence of 1–3 years. Because the prisoner's sentence is less than 30 years, the initial parole eligibility date is one-third of 27 years, or 9 years. *Chatman–Bey,* 797 F.2d at 993–94. Even though the prisoner would have been entitled to application of the D.C. guidelines after one year of incarceration had he committed only the D.C.Code offense, with annual rehearings in the event of a denial, application is delayed until 9 years after incarceration because actual release would be unwarranted before that time. *Chat-*

*man–Bey* is relevant at this point because it illustrates the following proposition: the need to accommodate the D.C. and federal parole regimes dictates that a prisoner serving a mixed sentence is not necessarily entitled to application of the D.C. parole guidelines upon completing the D.C. minimum term.

In a similar vein, we refuse to find that the Commission should have applied the D.C. guidelines on August 22, 1988, the date of Thomas' initial hearing. Accordingly, we hold that the Commission must grant Thomas a D.C. parole hearing sometime prior to the expiration of his "federal time" on December 21, 1993.[7]

### III.

■ This assumes, of course, that the Commission properly assigned Thomas 280 months of "federal time." Thomas had received a 420 month sentence for his federal offenses. In its final Notice of Action, a Commission hearing panel determined that under the federal parole guidelines, 28 C.F.R. § 2.20, Thomas should serve 78–116 months to account for that sentence. It nonetheless decided to depart from the guidelines range and impose 280 months of "federal time," the maximum amount permitted by the "mixed sentence" parole regulations. *Id.* § 2.66(d) (time served for federal portion of mixed sentences may not exceed two-thirds of federal sentence). Thomas appealed to the National Appeals Board, which affirmed the panel's departure on the basis of a number of aggravating factors:

> [A] decision above the guidelines appears warranted because you have an extremely serious, assaultive prior record, including failure on probation supervision, escapes from custody and commission of new criminal behavior while on work release or escape status. Specifically, you committed an [sic] robbery in 1960 while on work release. You committed another robbery in 1972 during which the victim was forced to crawl across the floor

and struck in the head with a gun. While in escape status in 1974, you committed the armed robbery/kidnaping/hostage offense [sic] during which the victims were blindfolded and bound. Two of the victims were 6 and 8 years old and repeatedly threatened with death during the offense.

Notice of Action on Appeal (Mar. 9, 1990).

Thomas concedes that the Commission was entitled to depart from the guidelines parole range of 78–116 months. *Cf. Augustine v. Brewer*, 821 F.2d 365, 371 (7th Cir.1987); *Romano v. Baer*, 805 F.2d 268 (7th Cir.1986). He contends, however, that the extent of the departure was excessive, because most of the aggravating factors cited by the Commission were "double counted"—that is, they were the same as those factors used to establish the guidelines parole range, and hence ineligible as aggravating factors, *see Romano*, 805 F.2d at 271—and the valid remaining factors do not warrant so drastic a departure.

■ Our review of the Commission's decision to depart and the extent of the departure is "extremely narrow and limited to determining whether the Commission acted arbitrarily or capriciously" or abused its discretion. *Id.* at 270. We examine only whether there was a rational basis for the departure, and may not substitute our own judgment for that of the Commission. *Bialkin v. Baer*, 719 F.2d 590, 593 (2d Cir.1983). By statute the Commission may depart from a guidelines parole range "if it determines there is good cause for so doing...." 18 U.S.C. § 4206(c). The term "good cause," which must be construed broadly, *Solomon v. Elsea*, 676 F.2d 282, 287 (7th Cir.1982), encompasses an inquiry into whether the prisoner's crimes involved particularly aggravating circumstances. *Id.; Augustine*, 821 F.2d at 371.

■ Thomas correctly observes that some of the factors relied upon by the Commission were "double counted" within the meaning of *Romano*. Thomas' parole

---

**7.** Our pruning of § 2.66 moots Thomas' ex post facto challenge to applying the provision in his case.

guidelines range directly reflects the facts that he forced a bank manager to retrieve money from his bank by holding one of his family members hostage, *see* 28 C.F.R. § 2.20, Subchapter C (Offense 221(b)), and that he committed that crime while on escape status. *See id.*, Salient Factor Score (Item E). As such, these facts may not be used as aggravating factors to justify departure. *Augustine*, 821 F.2d at 371; *Romano*, 805 F.2d at 271; *accord Maddox v. United States Parole Comm'n*, 821 F.2d 997, 1001 (5th Cir.1987).

However, the Commission may weigh the particular nature of an offense as an aggravating factor even if the offense itself was accounted for in setting the guideline range. *Romano*, 805 F.2d at 271; *Solomon*, 676 F.2d at 287; *accord Maddox*, 821 F.2d at 1001. Thomas did not merely (!) force a bank manager to turn over money from his bank by holding his family members hostage. In the course of committing that offense Thomas blindfolded the manager's six- and eight-year old sons, bound them, and repeatedly threatened them with death. These particularly cruel and violent aspects of his federal offense were not contemplated in setting his federal parole guidelines range under § 2.20; consequently, the Commission's consideration thereof as an aggravating factor is not "double counting." On the basis of that factor alone, we cannot say that the Commission's rather drastic departure to 280 months from a guidelines range of 78–116 months was arbitrary and capricious or an abuse of discretion.

Thomas' other contentions are without merit. He is entitled to a parole hearing sometime prior to the expiration of his "federal time" on December 21, 1993, at which the Commission shall apply the D.C. parole suitability guidelines to the D.C. portion of his mixed sentence.

AFFIRMED IN PART, REVERSED IN PART.