

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-16-2008

# Napoleon Graves v. Ronnie Holt

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-3215

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Napoleon Graves v. Ronnie Holt" (2008). *2008 Decisions.* Paper 102.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/102

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3215
_____

NAPOLEON GRAVES,

                                                    Appellant

              vs.

RONNIE HOLT

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 07-cv-00849)
District Judge:  Honorable Christopher C. Conner

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
NOVEMBER 24, 2008
Before: SCIRICA, Chief Judge, CHAGARES AND WEIS, Circuit Judges

(Opinion filed  December 16, 2008)
_____

OPINION
_____


PER CURIAM.

         Appellant Napoleon Graves appeals from an order of the District Court

dismissing his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241.

Finding no error, we will affirm.  Because the parties are familiar with the relevant facts

1

and the procedural background, we will not discuss them in detail.

Graves was sentenced in the District of Columbia Superior Court to a term of imprisonment of 12 years for a May 1989 conviction for attempted distribution of cocaine, and to an additional 690 days for carrying a dangerous weapon, attempted possession of cocaine, and simple assault. On October 19, 2000, he was paroled from his DC sentence and was to remain under parole supervision until July 1, 2008.

On April 12, 2006, the United States Parole Commission issued a Warrant, charging Graves with violating the conditions of his parole by driving recklessly and refusing to take a breathalyser test. On June 16, 2006, Graves was arrested and charged with threats, assault with a dangerous weapon, and felon in possession of a firearm, on the basis of a domestic incident. The Parole Commission subsequently added these charges to the April 2006 Warrant. During the parole-related probable cause proceedings,[1] Graves' wife, Gladys, and stepson, Carlos Howard, were listed as adverse witnesses on the basis of statements they gave to police on the day of the June 16 arrest.

On September 28, 2006, the Parole Commission held a revocation hearing. Graves was represented by counsel. The arresting officer, Officer Headrick, testified in accordance with the arrest report, which incorporated the original statements given by Mrs. Graves and Mr. Howard. In his defense, Graves' counsel introduced new statements

---

[1] The Prince William County (Virginia) prosecutor declined to prosecute criminal charges.

2

from Mrs. Graves and Mr. Howard, disavowing their original statements. Counsel had met with them previously, and, after obtaining the new statements, told them their presence at the hearing would not be required. In fact they did not appear at the hearing. The hearing examiner recommended no finding of guilt on any of the charges. As to Charge 3(B) in particular, felon in possession of a firearm, the "no finding" decision was based on the failure of Mrs. Graves and Mr. Howard to appear. The hearing examiner reasoned that Officer Headrick's testimony was insufficient to support a finding of guilt, because he had no first-hand knowledge of Graves' possession of the firearm.

On October 6, 2006, the reviewing examiner disagreed with the disposition of Charge 3(B) and found that the preponderance of the evidence supported a finding that Graves had constructive possession of a firearm. The Parole Commission agreed with the reviewing examiner. It issued a Notice of Action on October 11, 2006, revoking Graves' parole and ordering him to serve 24 months imprisonment. All of Graves' street time was forfeited, giving him a new full term date of March 14, 2014.

Graves timely appealed to the National Appeals Board. He contended that Officer Headrick lied about the June 16, 2006 firearm incident, and that his testimony had been based on unreliable hearsay – that is, on the original statements given at the scene by Mrs. Graves and Mr. Howard. Graves claimed that Officer Headrick threatened his wife and stepson, causing them to give the information that implicated him in the crime of felon in possession. The Appeals Board was not persuaded and affirmed. The Board

3

acknowledged that there had been differing accounts about what had happened in the Graves' home prior to the police department's arrival on the scene, and that the local prosecutor had declined to press criminal charges. Nevertheless, the initial statements given by Mrs. Graves and Mr. Howard were judged to be credible and they adequately supported the charge under the applicable standard. The later statements, according to the Board, were "not more credible than the version provided by police based upon statements made immediately after the incident and the testimony of Officer Headrick."

Graves filed the instant habeas corpus petition in United States District Court for the Middle District of Pennsylvania, alleging that (1) the Parole Commission, in adjudicating him guilty, improperly relied upon unreliable hearsay evidence (Officer Headrick's testimony concerning the initial statements given by Mrs. Graves and Mr. Howard), and (2) his counsel before the Parole Commission had been ineffective in advising these witnesses not to appear. The Parole Commission submitted an answer, asserting that each argument advanced by Graves had not been fully presented to the Appeals Board. The Magistrate Judge issued a Report and Recommendation, recommending that the petition be denied. In pertinent part, he concluded that the ineffectiveness claim was unexhausted and the due process claim lacked merit because the Board may consider hearsay evidence, and there was a rational basis in the record to support the revocation of Graves' parole. In an Order entered on May 27, 2008, the District Court adopted the Report and Recommendation, and dismissed in part and denied

4

in part Graves' habeas corpus petition. This appeal followed.

We will affirm. As a District of Columbia prisoner Graves needs a certificate of appealability to proceed, see Madley v. U.S. Parole Comm'n, 278 F.3d 1306, 1309 (D.C. Cir. 2002) (D.C. prisoner is state prisoner for purposes of federal habeas corpus statute); Coady v. Vaughn, 251 F.3d 480, 486 (3d Cir. 2001) (state prisoner in custody pursuant to judgment of state court must rely on 28 U.S.C. § 2254 to bring claims challenging execution of his sentence); 28 U.S.C. § 2253(c)(1)(A) (certificate of appealability required to proceed with appeal where continued detention resulted initially from state court judgment), and we hereby grant it.

Graves has now served his 24-month parole violator term. He was re-paroled on June 15, 2008, which raises the question whether this appeal is moot. The case-or-controversy requirement continues through all stages of federal judicial proceedings, trial and appellate, and requires that parties have a personal stake in the outcome. Lewis v. Continental Bank Corp., 494 U.S. 472, 477-478 (1990). Graves' challenge is not one to an underlying conviction; however, even if collateral consequences are not presumed, Graves may still avoid a finding of mootness if he can show a continuing injury that is sufficient. Spencer v. Kemna, 523 U.S. 1, 14 (1998). We are satisfied that he has done so. Liberally construing his argument, he claims that, were he to prevail here the Commission's forfeiture of his "street time" (time spent on parole) would be invalidated and the full term date of his sentence (the date until which he will be

5

subject to parole supervision) would advance accordingly. When Graves was last released on parole, his full term date was July 1, 2008 (instead of the current March 14, 2014), and thus he has shown a collateral consequence sufficient to keep the controversy alive. The parties have not argued otherwise.

Turning to the merits, a court's role in reviewing decisions by the United States Parole Commission on an application for a writ of habeas corpus is limited. See Gambino v. Morris, 134 F.3d 156, 160 (3d Cir. 1998). The appropriate standard of review is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons. Id. (citing Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir.1976)). The court must only ensure that the Commission's decision is not arbitrary and capricious, nor based on impermissible considerations. Id. Graves' only contention on appeal concerns the "unreliability" of Officer Headrick's testimony to the extent he relied upon Mrs. Graves' and Mr. Howard's original statements.

It is clear the Parole Commission had a rational basis to credit the testimony of Officer Headrick over Mrs. Graves' and Mr. Howard's later version of events. The police arrived at the scene after a 911 call. All residents, including Graves, his wife, and his stepson, eventually exited the building. The police recovered a firearm in a trash can located in the basement bathroom under a sink, and it was Mrs. Graves who showed the officer the location of the firearm. She gave a statement at the scene which indicated that Graves had possession of the gun at one point during an incident which involved behavior

6

that could be interpreted as threatening. Mr. Howard gave a statement that he responded to a call for help from his mother and emerged from his bedroom to find his stepfather with a gun in his hand. He retrieved his shotgun from his bedroom, and, when Graves refused to put the gun down, fired a warning shot into the floor. Only then did Graves put the gun down.[2]

The only evidence of record calling into question the reliability of Officer Headrick's testimony and Mrs. Graves' and Mr. Howard's original statements are Mrs. Graves' and Mr. Howard's subsequent affidavits recanting. We do not believe the Parole Commission acted irrationally in discrediting these subsequent affidavits. The original statements were given during the heat of the moment, and thus likely to be truthful, whereas the later statements were given once the parole revocation proceedings had commenced and the harsh reality of the probable break-up of the Graves' family, as a result of Graves' likely reincarceration, began to sink in for all concerned. Furthermore, Mr. Howard's later affidavit still puts the gun in Graves' hand under circumstances that made Mr. Howard fearful for his and his mother's safety.[3]

---

[2] When questioned by police, Graves provided a statement that a neighbor had come to his house with a weapon and that he had kicked the weapon from the neighbor's hand.

[3] In his subsequent affidavit, Mr. Howard stated:

> My stepfather picked up the gun to show it to me and told me that he took it from a guy that ran out of the house. I told him to put the weapon down until I knew exactly what was going on. My stepfather ... was jittery, repeating, "look at this." He did not point the weapon at me. He was more concerned with

7

Finally, although parolees have the right to a revocation hearing at which they can present witnesses and cross-examine adverse witnesses, see Morrissey v. Brewer, 408 U.S. 471, 489 (1972), Graves was not deprived of his right to cross-examine adverse witnesses, because Mrs. Graves and Mr. Howard, having recanted, were no longer adverse to him by the time of the revocation hearing.

For the foregoing reasons, we will affirm the order of the District Court denying Graves' habeas corpus petition.

---

showing me the weapon. I was concerned because he was nervous and holding a gun. From my experience with weapons, I knew this was not a safe situation. I fired a shot of birdshot into the floor. Napoleon Graves then sat down on the couch and tossed the weapon to the side."

See Appellant's Brief, Appendix "B."