**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1842
_____

EDDIE WILSON,

Appellant

v.

UNITED STATES PAROLE COMMISSION;
WARDEN JONATHAN C. MINER
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(Civil Action No. 4:06-cv-1853)
District Judge: Honorable John E. Jones III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 12, 2011

Before:  SLOVITER, FUENTES, and GARTH, <u>Circuit
Judges</u>

(Opinion filed: July 22, 2011)

Raymond J. Rigat, Esq.
Two Penn Center Plaza, Suite 200
1500 JFK Boulevard
Philadelphia, PA 19102-1706
        Counsel for Appellant Eddie Wilson

Stephen R. Cerutti II, Esq.
Office of the United States Attorney
228 Walnut Street, 2nd Floor
Harrisburg, PA 17108-1754
        Counsel for Appellees United States Parole
Commission and Jonathan C. Miner

_____

OPINION OF THE COURT
_____

GARTH, Circuit Judge.

Petitioner-appellant Eddie Wilson appeals from the District Court's denial of his habeas petition. Wilson is currently detained in a federal facility located in West Virginia and is serving an aggregate sentence comprised of sentences that were imposed under the D.C. Code and the U.S. Code.[1] At the time of filing his petition, Wilson was

---

[1] The D.C. Code permits "the Attorney General of the United States [to] assign a defendant sentenced to prison for a violation of the D.C.Code to . . . a federal facility," and "if a prisoner assigned to a federal facility is serving sentences for both U.S. and D.C.Code offenses, the Bureau of Prisons is required to aggregate his various terms of imprisonment into

a single sentence for administrative purposes" pursuant to 18 U.S.C. § 3584. Boone v. Menifee, 387 F. Supp. 2d 338, 346 (S.D.N.Y. 2005). The resulting method for calculating parole is unique, as the U.S. District Court for the District of Columbia explained in a proceeding related to this case:

> When the Commission considers for parole "prisoners serving any combination of U.S. and D.C. Code sentences that have been aggregated by the U.S. Bureau of Prisons" (BOP), the Commission is directed by regulation to "apply the guidelines at [28 C.F.R.] § 2.20 to the prisoner's U.S. Code crimes, and the guidelines of the District of Columbia Board of Parole to the prisoner's D.C. Code crimes." 28 C.F.R. § 2.65(a)-(b) (2010). Although the process is thus bifurcated, parole consideration is nonetheless made "on the basis of a single parole eligibility and mandatory release date on the aggregate sentence" and "every decision made by the Commission, including the grant, denial, and revocation of parole, is made on the basis of the aggregate sentence." Id. § 2.65(a).

3

incarcerated in a federal penitentiary in Allenwood, Pennsylvania.

In his petition, Wilson alleged that respondent-appellee the United States Parole Commission (Commission) had violated his constitutional rights under the Due Process and Ex Post Facto Clauses by denying him parole and refusing to set a presumptive release date. We hold that Wilson must obtain a Certificate of Appealability (COA) to proceed with this appeal, and we deny his request for issuance of such a Certificate. Accordingly, we will dismiss Wilson's appeal for lack of jurisdiction.

## I.

In 1977, Wilson was convicted of first-degree murder and armed assault in the Superior Court of the District of Columbia. He was sentenced to a term of twenty-eight years to life imprisonment under the D.C. Code. In 1987, while serving his D.C. Code sentence in a federal facility, Wilson was convicted for possession with intent to distribute a Schedule IV controlled substance in violation of 18 U.S.C. § 4205, for which he received a three-year sentence. He was also found not guilty of a corresponding charge for possession of a knife. In 2001, Wilson's D.C. Code sentence was aggregated with his U.S. Code sentence in accordance with Chatman-Bey v. Meese, 797 F.2d 987 (D.C. Cir. 1986),

Wilson v. Fullwood, ___ F. Supp. 2d ___, 2011 WL 1113361, at *2 (D.D.C. 2011) (footnote omitted ).

4

<u>vacated on other grounds</u>, 864 F.2d 804 (D.C. Cir. 1988).[2] Since 2003, Wilson has been engaged in litigation

---

[2] <u>Chatman-Bey</u> prescribed the mechanics of aggregation as follows :

> Whether consecutive sentences are imposed solely under the U.S. Code, or under the federal Code and the D.C. Code, all should be added together to arrive at a single aggregate sentence. But because the D.C. Code "otherwise provides," the 10-year cap [on parole ineligibility] indicated in 18 U.S.C. § 4205(a) [is] not . . . dispositive when a D.C. Code sentence is implicated. Rather, the prisoner . . . remain[s] ineligible for parole until he complete[s] service of time equivalent to the minimum D.C. Code sentence or sentences.
>
> . . .
>
> . . . [W]e hold that 1) the same full aggregation approach must be used in calculating the parole eligibility date of persons incarcerated in federal penitentiaries, whether under U.S. Code sentences or both U.S. Code

challenging the Commission's determinations concerning his parole. [3]

Wilson, acting pro se, filed a 28 U.S.C. § 2241 petition with the U.S. District Court for the Middle District of Pennsylvania on September 20, 2006. He alleged that the Commission had 1) violated his due process rights in 2004 and 2005 by arbitrarily denying him parole and by retaliating for his success in prior litigation to have certain disciplinary enhancements removed, and 2) violated the U.S. Constitution's Ex Post Facto Clause by failing to set a parole-release date within his guidelines range, as required under the version of the Sentencing Reform Act (SRA) in effect when his U.S. Code sentence was imposed.

While the petition was pending before the District Court, on June 3, 2008, the Commission again denied Wilson

---

and D.C. Code sentences, but that 2) persons sentenced for D.C. Code offenses must serve time at least equal to the minimum D.C. Code term or terms before they may be considered for parole.

797 F.2d at 993-94.

[3] We have summarized the remainder of Wilson's background information in an earlier stage of these proceedings. Wilson v. Reilly, 163 F. App'x 122 (3d Cir. 2006). We include here only those facts that are germane to this appeal.

6

parole and scheduled a reconsideration hearing for April 2011.

By memorandum and order dated February 11, 2010, the District Court denied the petition, reasoning that 1) the Commission had a rational basis for denying Wilson parole (i.e., the "unusual circumstances" of his offenses) and 2) Wilson was not entitled to benefit from the release-date guarantee under the earlier version of the SRA because the Commission applied D.C. Code regulations, not the current SRA, in declining to set a parole date. The District Court also denied Wilson's request for a COA, explaining that a petitioner who is in custody "by virtue of a District of Columbia" judgment is considered a state prisoner needing a COA, and that Wilson had not made the threshold showing for issuance of such a Certificate.

Wilson requested a COA from this Court under 28 U.S.C. § 2253(c)(1). On October 26, 2010, this Court referred the request to a merits panel, appointed counsel for Wilson, and instructed that, "[i]n addition to the merits of the appeal, counsel for appellant is directed to address the question of whether a [COA] is required for this appeal, to the extent that the habeas petition challenges a parole decision regarding a federal sentence."

## II.

As a "jurisdictional prerequisite" to appealing from a denial of a habeas petition, a state prisoner "must first seek and obtain a COA from a circuit justice or judge." Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003); see also Morris v. Horn, 187 F.3d 333, 339 (3d Cir. 1999) ("A habeas petitioner

7

seeking to appeal must obtain a [COA] in order for the court of appeals to have jurisdiction." (citations omitted)). Congress established the COA requirement as "[t]he primary means of separating meritorious from frivolous appeals" that would "delay[] the States' ability to impose sentences." Barefoot v. Estelle, 463 U.S. 880, 892-93 (1983). The COA requirement is codified at 28 U.S.C. § 2253, which provides in relevant part:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B) the final order in a proceeding under section 2255 [for correcting erroneous sentences].

Id. § 2253(c)(1). The question here is whether Wilson's detention pursuant to his aggregated D.C. Code/U.S. Code sentence (hereafter "mixed sentence") "arises out of process issued by a State court."

8

It is settled law that "a court of the District [of Columbia] is a state court for purposes of section 2253(c)," and thus "a prisoner arrested or convicted pursuant to process or judgment of the courts of the District must obtain a COA." Madley v. U.S. Parole Comm'n, 278 F.3d 1306, 1308, 1310 (D.C. Cir. 2002). As the D.C. Circuit observed in Madley,

> The federal seat of government is constitutionally different from the states, but Congress has created a trial and appellate court system of general jurisdiction for the District separate from the United States courts (of which we are a part) and intended to serve the District in much the same manner as the court systems of the various states and other large municipal entities.

Id. at 1308. In several non-precedential opinions, this Court has repeatedly endorsed Madley's holding that a prisoner incarcerated for D.C. Code violations is considered a state prisoner who must obtain a COA. See, e.g., Robinson v. Reilly, 340 F. App'x 772, 773 (3d Cir. 2009); Graves v. Holt, 303 F. App'x 121, 123 (3d Cir. 2008); Keitt v. U.S. Parole Comm'n, 238 F. App'x 755, 758 (3d Cir. 2007). We again hold, in light of Madley, that prisoners serving D.C. Code offenses must obtain a COA to appeal denial of their habeas petitions.[4]

---

[4] The D.C. Court of Appeals' decision in Taylor v. Washington, 808 A.2d 770 (D.C. 2002), does not undercut

9

The more complex question -- and one for which we have not found direct precedent -- is whether a petitioner such as Wilson, whose D.C. Code sentence was aggregated with his U.S. Code sentence, is still considered to be subject to detention that "arises out of process issued by a State court" for the purposes of § 2253(c)(1)(A)'s COA requirement. We conclude that the aggregation of Wilson's D.C. Code sentence with his U.S. Code sentence, which Wilson received while serving his D.C. Code sentence, does not alter our analysis under § 2253(c)(1).

In <u>Coady v. Vaughn</u>, 251 F.3d 480, 486 (3d Cir. 2001), we held that a state prisoner objecting to a decision by the parole board must obtain a COA because he was challenging "his continued detention, which resulted initially from a state court judgment." Even though the parole board's decision was "neither 'process' nor 'issued by a State court,'" we looked to the underlying basis for the prisoner's initial detention to determine whether a COA was necessary. <u>Id.</u>

<hr>

<u>Madley</u>'s reasoning. The holding of <u>Taylor</u> -- that D.C. courts have no jurisdiction to entertain certain D.C. Code offenders' habeas petitions, according to the D.C. Code's habeas provision, <u>id.</u> at 772-73 -- signaled only that D.C. courts do not mirror state courts in every respect, a fact which the <u>Madley</u> court had already acknowledged. <u>See</u> <u>Madley</u>, 278 F.3d at 1308. Indeed, <u>Madley</u> emphasized that the question of whether statutory reference to a "State" encompasses the District of Columbia depends on the particular statute, and held that in the context of § 2253(c)(1), the term "State" includes the District of Columbia. <u>Id.</u>

Other courts of appeals that have considered the same issue have similarly construed § 2253(c)(1)(A)'s COA requirement as pivoting on whether the *initial basis* for the detention complained was a State court judgment or process, even when the prisoner is only challenging a decision of the prison board. Medberry v. Crosby, 351 F.3d 1049, 1063 (11th Cir. 2003); Madley, 278 F.3d at 1310; Greene v. Tenn. Dep't of Corr., 265 F.3d 369, 372 (6th Cir. 2001); Montez v. McKinna, 208 F.3d 863, 869 (10th Cir. 2000); see also Hayward v. Marshall, 603 F.3d 546, 553-54 (9th Cir. 2010) (en banc), abrogated on other grounds by Swarthout v. Cooke, 131 S.Ct. 859 (2011). But see Walker v. O'Brien, 216 F.3d 626, 638 (7th Cir. 2000) (concluding COA was not required because "prisoner's administrative detention" was not "something that *arises* from process issued by the state court").

Although Coady and cases of its ilk interpreted the language of § 2253(c)(1)(A) in a slightly different context -- specifically, in determining whether prison-board administrative decisions "arose out of process issued by a State court" -- their approach informs the inquiry here. In determining whether a COA is required under § 2253(c)(1)(A), a court must ask whether the prisoner's detention originated from a state court conviction and/or sentence, even when the prisoner is objecting to a subsequent disciplinary or parole-related decision that is distinct from the judgment of conviction.

In view of Coady's construction of § 2253(c)(1)(A), we hold that Wilson was required to obtain a COA before this court could entertain his habeas petition. The reason for

11

Wilson's initial detention was the judgment of conviction issued by a D.C. court, which, as discussed above, is considered "process issued by a State court" pursuant to § 2253(c)(1)(A). Wilson committed, and was sentenced for, his U.S. Code violation while imprisoned for his D.C. Code offenses -- meaning that, for the purposes of our analysis, his federal offense and sentence "arose out" of his D.C. sentence.[5]   Similarly, the Commission's refusals to grant

---

[5]   That said, we reject the Government's characterization of a mixed sentence as arising exclusively out of D.C. (and thus, state) process for the purposes of § 2253.  The Government, citing Chatman-Bey, argues that a mixed sentence effectively operates as a D.C. Code sentence, and thus, "Wilson's current incarceration must be viewed as purely a result of his D.C. Code 28 years-to-life sentence." (Gov't's Br. at 21.)  In Chatman-Bey, the D.C. Circuit held that the D.C. Code and U.S. Code sentences of a prisoner detained in a federal facility should be treated as a single aggregate sentence, but that in calculating the prisoner's parole eligibility date, the prisoner would need to serve the minimum term prescribed for his D.C. Code offense -- no matter how long -- despite the U.S. Code mandate that the prisoner be parole-eligible after ten years.  797 F.2d at 993-94.

Since Chatman-Bey, numerous authorities have emphasized -- contrary to the Government's position here -- that mixed sentences are not simply treated as D.C. Code sentences; rather, their hybridity is preserved.  E.g., Thomas v. Brennan, 961 F.2d 612, 615 (7th Cir. 1992) ("[W]hatever aggregation means, it is partial rather than complete . . . [T]he Commission must apply D.C. parole regulations to the D.C.

12

Wilson parole and to set a parole release date -- whether viewed as decisions related to just Wilson's D.C. Code sentence or to both his D.C. Code and U.S. Code sentences -- are determinations incident to Wilson's continuing detention for his original D.C. Code offense, and thus, "aris[e] out of process issued by State court."[6]  As a consequence, Wilson needs a COA to sustain his appeal.

---

portion of mixed sentences and federal parole regulations to the federal portion."); id. at 618.

Thus, it is clear that the U.S. Code component of a mixed sentence is *not* subsumed by its corresponding D.C. Code component.  Instead, a mixed sentence,  which is partially governed by federal parole regulations, is clearly distinct from -- not equivalent to -- a pure D.C. Code sentence.  By the same token, the converse position that Wilson espouses -- that a mixed sentence's D.C. Code component is swallowed by its U.S. Code component -- is likewise untenable.

[6]  Wilson concedes as much in his appellate brief, relating that he is "in custody by virtue of a District of Columbia judgment." (Appellant's Br. at 6.).  Additionally, it is  telling that when the Commission offered reasons for denying Wilson's parole in 2004 and 2005 -- the decisions that Wilson challenges in his petition -- it referred exclusively to his D.C. court convictions, without once mentioning his U.S. Code violation.  (A61-64, 67-71.)

13

## III.

In deciding whether to issue a COA, we review a habeas petition to determine whether the "petitioner has made a substantial showing of the denial of a constitutional right," meaning that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 336 (citation and internal quotation marks omitted). Wilson alleges violations of his constitutional rights under the Due Process Clause and Ex Post Facto Clause.

## A.

Wilson's due process claim is premised on his allegation that the Commission denied his parole in 2004 and again in 2005 for arbitrary and vindictive reasons. Specifically, he alleges that even though the Commission found in 2001 that "a decision outside the Total Guidelines range . . . is not warranted" (meaning that he could be parole-eligible within his guidelines range), it altered its stance in 2004, recommending that Wilson's parole-eligibility date should be *above* the guidelines range since he was "a more serious risk" than the base offense score for his 1975 crimes indicated. The Commission ratified the 2004 finding in its 2005 decision to deny Wilson parole. Wilson argues that the shift in argument for denying him parole evinces that the Commission was inventing reasons to justify his continued detention, and suggests that the Commission acted in retaliation for his success in getting his disciplinary enhancements removed through litigation.

14

Wilson's due process claim fails, substantially for the reasons expressed by the District Court. The Commission had found in 2001 that Wilson "poses a more serious risk" due to the violent nature of his offenses. At that time, the Commission determined that a parole-eligibility date above the guidelines range was not warranted *only* because Wilson had not yet reached his minimum guideline range -- at which point his parole date could be "better assessed" -- and *not* because he was perceived as anything other than a serious parole risk.

In 2004, once Wilson had served the minimum guidelines term, the Commission was in a suitable position to gauge Wilson's eligibility for parole, and concluded, consistent with its 2001 finding of risk, that parole within the Guidelines range was inappropriate. It reached that decision on the basis of the relevant D.C. Code criteria for setting a parole date above the guidelines for "[m]ore serious parole risks[]," e.g., his "[u]nusual cruelty to the victim" (he kidnapped and raped female victims -- one a minor -- and sodomized a male victim with a lightbulb) and "[u]nusual propensity to inflict unprovoked and potentially homicidal violence" (he was involved in two murders). See 28 C.F.R. § 2.80(n)(2)(ii)(C)-(D).

Accordingly, the 2004 and 2005 decisions to deny parole, which the Commission reached upon considering the germane parole factors, were neither arbitrary nor capricious. Nor, for that matter, can the decisions be construed as vindictive, since Wilson's disciplinary enhancements were removed only *after* the Commission issued its 2004 decision, which the 2005 decision mirrored in all relevant respects. As

15

such, Wilson has not made a substantial showing that the Commission violated his due process rights.

**B.**

Wilson also alleges that the Commission violated the Ex Post Facto Clause by denying him a parole-release date within his guidelines range, as required under the version of § 235(b)(3) of the SRA that was in effect when his U.S. Code sentence was imposed. In Lyons v. Mendez, 303 F.3d 285, 293 (3d Cir. 2002), we held that prisoners who committed U.S. Code crimes between the time of the SRA's enactment in 1984 and § 235(b)(3)'s amendment in 1987 were entitled to parole release date within the guidelines range, even though the 1987 amendment authorized the Commission to set release dates beyond the guidelines range. We specified that "the retroactive application of the 1987 amendment to lengthen [the appellant's] punishment was unconstitutional under the ex post facto clause." Id. at 292.

Here, as the District Court properly noted, the Commission did not rely on the post-1987 version of the SRA to deny Wilson a parole date within the guidelines range. Rather, the Commission applied the relevant D.C. Code parole guidelines, which -- both at the time of the parole hearings and at the time that Wilson's D.C. Code sentence was imposed -- vested the overseeing parole board with discretion to set a parole date above the guidelines range. See Wilson, ___ F. Supp. 2d ___, 2011 WL 1113361, at *3-5. The Commission appropriately considered only the D.C. Board of Parole criteria, as opposed to the SRA's parole provisions for U.S. Code sentences, because Wilson was considered "D.C. Parole Eligible." 28 C.F.R. § 2.65(b), (e).

16

As the Commission had no occasion to consider whether parole was appropriate under the SRA, Wilson's ex post facto claim resting on <u>Lyons</u> cannot be sustained.

## IV.

We hold that Wilson was required to obtain a COA before his appeal could be heard, and that he has not made the necessary showing of constitutional violations that would justify issuance of a COA. Therefore, we deny his request for a COA and dismiss his appeal for lack of jurisdiction.