# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 6, 2009       Decided February 26, 2010

No. 07-5385

DAMON ELLIOTT,
APPELLANT

v.

UNITED STATES DEPARTMENT OF AGRICULTURE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 06cv00240)

*Anand V. Ramana*, appointed by the court, argued the cause and filed the briefs as *amicus curiae* in support of appellant.

*Damon Elliott*, pro se, filed briefs for appellant.

*Andrea McBarnette*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief was *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: TATEL, GARLAND, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Appellant brought suit under the Freedom of Information Act (FOIA) to compel the United States Department of Agriculture to disclose blueprints to buildings located on an agricultural research campus. Concluding that the requested blueprints fall within FOIA Exemption 2, which exempts from disclosure matters "related solely to the internal personnel rules and practices of an agency," 5 U.S.C. § 552(b)(2), the district court granted summary judgment for the government. For the reasons set forth in this opinion, we affirm.

**I.**

Appellant Damon Elliott submitted FOIA requests seeking architectural blueprints for all buildings on the campus of the United States Department of Agriculture's (USDA's) Beltsville Agricultural Research Center (BARC). Elliott apparently seeks the blueprints in order to prove that Building 22, a residential building on the BARC campus, is nonfederal property. After conducting a search for responsive documents, the agency informed Elliott that although it maintains blueprints for 375 BARC buildings, it has none for Building 22. The agency refused to disclose any blueprints, however, asserting that FOIA Exemption 2 "protects sensitive critical infrastructure information related to security and safety." Letter from Stasia A.M. Hutchison, FOIA Coordinator, USDA, to Damon Elliott (Dec. 29, 2005).

After exhausting his administrative remedies, Elliott brought suit in the U.S. District Court for the District of Columbia to compel disclosure of all blueprints responsive to his FOIA requests. *See* 5 U.S.C. § 552. Seeking summary judgment, the government argued that the blueprints fell within FOIA Exemption 2 because their disclosure would

compromise the security of BARC's critical infrastructure and research programs.

The district court granted the government's motion in part, finding that although the agency had performed an adequate search for responsive documents, it had failed to sufficiently justify withholding the blueprints under Exemption 2. *Elliott v. U.S. Dep't of Agric.*, No. 06-240, 2007 WL 1302588, at \*4 (D.D.C. May 2, 2007). Following a renewed motion for summary judgment and additional filings by both parties, the court then concluded that the blueprints were exempt from disclosure because they are "used for predominantly internal purposes and their disclosure may risk circumvention of federal policies, statutes, or regulations." *Elliott v. U.S. Dep't of Agric.*, 518 F. Supp. 2d 217, 221 (D.D.C. 2007). In addition, the district court held that no reasonably segregable portion of the blueprints could be disclosed without posing a security risk. *Id.* Elliott appealed, and we appointed amicus curiae to present arguments on his behalf.

## II.

"[D]isclosure, not secrecy, is [FOIA's] dominant objective." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). Consistent with this purpose, agencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions. *See* 5 U.S.C. § 552(b). These exemptions are "explicitly exclusive," *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (internal quotation marks omitted), and the agency bears the burden of showing that withheld material falls within the asserted exemption, 5 U.S.C. § 552(a)(4)(B).

This case concerns the scope of Exemption 2, which covers matters "related solely to the internal personnel rules

4

and practices of an agency." 5 U.S.C. § 552(b)(2). The courts have devoted thousands of pages of the Federal Reporter to the explication of these twelve words, cutting out some and pasting in others. As a result, like the Ship of Theseus, little of Congress's original language remains. We think it useful to briefly review how we got to this point.

For fifteen years after FOIA's enactment, *see* Pub. L. No. 89-487, 80 Stat. 250 (1966), considerable confusion surrounded the scope of Exemption 2. This uncertainty stemmed from the seemingly contradictory interpretations of the exemption expressed in the House and Senate Reports. The Senate Report stated that Exemption 2 "relates only to the internal personnel rules and practices of an agency. Examples of these may be rules as to personnel's use of parking facilities or regulation of lunch hours, statements of policy as to sick leave, and the like." S. Rep. No. 89-813, at 8 (1965). Taking a different view, the House Report described the exemption as encompassing "[o]perating rules, guidelines, and manuals of procedure for Government investigators or examiners." H.R. Rep. No. 89-1497, at 10 (1966). Even given these differences, however, the House and Senate committees both saw Exemption 2 as narrowing the public disclosure exemption under former section 3 of the Administrative Procedure Act (APA), which protected from disclosure "any matter relating solely to the internal management of an agency." *Rose*, 425 U.S. at 362 (citing Congress's dissatisfaction with the broad sweep of the APA's exemption, 5 U.S.C. § 1002 (1964 ed.)).

Confronting the dueling House and Senate Reports for the first time in *Department of the Air Force v. Rose*, 425 U.S. 352 (1976), the Supreme Court declined to pick sides. On the one hand, the Court accepted the Senate's interpretation of Exemption 2 as covering minor employment-related matters

in which the public lacked a significant interest. *Id.* at 369–70. On the other hand, the Court acknowledged, but did not decide, that the exemption might protect the more important materials contemplated by the House Report "where necessary to prevent the circumvention of agency regulations that might result from disclosure to the subjects of regulation of . . . procedural manuals and guidelines used by the agency." *Id.* at 364.

With the question thus left open by the Supreme Court, and facing what we believed to be mutually exclusive views of Exemption 2, we initially adopted the Senate Report as the authoritative expression of Congress's intent. In *Jordan v. United States Department of Justice*, 591 F.2d 753, 763 (D.C. Cir. 1978) (en banc), we stated that "personnel" refers only to "matters relating to pay, pensions, vacations, hours of work, lunch hours, parking, etc." Applying this construction, we ordered the release of prosecutorial guidelines used by U.S. Attorneys on the ground that, as envisioned by the Senate Report, the guidelines fell outside Exemption 2's scope. *Id.*

Three years later and sitting en banc, we reversed course and expressly repudiated *Jordan*'s "limited" interpretation of Exemption 2 in *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1073 (D.C. Cir. 1981). There, the FOIA requester sought a copy of a Bureau of Alcohol, Tobacco & Firearms (ATF) manual used to train new agents in surveillance techniques. Picking up where the Supreme Court left off in *Rose*, we held that Exemption 2 protects nontrivial matters "where disclosure might risk circumvention of the law." *Id.* at 1066. Accordingly, "the words 'personnel rules and practices' encompass not merely minor employment matters," as we held in *Jordan*, "but may cover other rules and practices governing agency personnel, including

significant matters like job training for law enforcement personnel." *Id.* at 1056.

Despite Exemption 2's reference to documents related "solely" to internal rules and practices, we further explained in *Crooker* that the exemption covers documents that are "predominantly" internal. *Id.* at 1056–57. This modification stemmed from our recognition that, if interpreted literally, the term "'relating' is potentially all-encompassing while 'solely' is potentially all-excluding." *Id.* at 1056 (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1150 (D.C. Cir. 1975) (Leventhal, J., concurring)) (internal quotation marks omitted). Thus, despite the fact that the withheld portions of the ATF manual had some effect on the public at large, we held that the manual fell squarely within Exemption 2 because it was used "for predominantly internal purposes," it was "designed to establish rules and practices for agency personnel, i.e., law enforcement investigatory techniques," and its "disclosure would risk circumvention of agency regulations." *Id.* at 1073.

*Crooker* thus resolves the apparent conflict between the House and Senate Reports by explaining that Exemption 2 is actually two exemptions wrapped in one. The so-called low 2 exemption, tracking the Senate Report, covers predominantly internal documents that deal with "trivial administrative matters of no genuine public interest." *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (internal quotation marks omitted). The "high 2" exemption, following the House Report, applies to "[p]redominantly internal documents the disclosure of which would risk circumvention of agency statutes and regulations." *Id.*

Since *Crooker*, we have articulated the requirements of the high 2 exemption—the one at issue in this case—in terms of a two-step inquiry. *Morley v. Cent. Intelligence Agency*,

508 F.3d 1108, 1124 (D.C. Cir. 2007). First, the information withheld must fall within the exemption's language. *Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990) (quoting *Founding Church of Scientology of Wash, D.C., Inc. v. Smith*, 721 F.2d 828, 830 n.4 (D.C. Cir. 1983)). That is, the material must be "used for predominantly internal purposes," and relate to "rules and practices for agency personnel." *Crooker*, 670 F.2d at 1073. Second, if this threshold step is satisfied, the agency can defeat disclosure by demonstrating that release of the material would significantly risk circumvention of federal regulations or statutes. *Schiller*, 964 F.2d at 1207; *see Crooker* at 1074.

"Notably, [t]his exemption does not shield information on the sole basis that it is designed for internal agency use." *Morley*, 508 F.3d at 1125 (internal quotation marks omitted) (alteration in original). In *Schwaner v. Department of the Air Force*, 898 F.2d 793 (D.C. Cir. 1990), for example, the plaintiff sought disclosure of a roster containing the names and duty addresses of military personnel stationed at Bolling Air Force Base. Recognizing that Exemption 2 was a poor fit because "data itself is not a practice," the district court nonetheless held that the list fell within the exemption because it was "purely internal." *Schwaner*, 898 F.2d at 794 (internal quotation marks omitted). We reversed, holding that "the list does not bear an adequate relation to any rule or practice of the Air Force as those terms are used in exemption 2." *Id.* Thus, although we have sometimes framed the first step of the test as one of "predominant internality," *see, e.g., Nat'l Treasury Employees Union v. U.S. Customs Serv.*, 802 F.2d 525, 528 (D.C. Cir. 1986) ("*NTEU*"), at least where the dispositive issue concerns whether the requested information adequately relates to internal matters, *Schwaner* makes clear that predominant internality is necessary but insufficient to get past the threshold inquiry; the government must also show

that the predominantly internal material bears a sufficient relationship to agency rules and practices.

With this background in mind, we turn to the government's argument that the requested blueprints are protected by the high 2 exemption. We review the district court's grant of summary judgment de novo, remaining mindful that "Congress intended that Exemption 2 be interpreted narrowly and specifically," *Rose*, 425 U.S. at 365 (internal quotation marks omitted), and that "the 'burden is on the agency' to show that requested material falls within" Exemption 2, *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (internal quotation marks omitted).

## III.

The government argues that the blueprints satisfy Exemption 2's threshold test because the "USDA uses blueprints," and "few individuals outside the USDA have seen the blueprints." Appellee's Br. 12, 13. Record evidence supports the first of these claims, which amicus does not contest: Agency personnel use the blueprints to perform building repairs, "add room number, room description and square footage information" to building databases, coordinate office and laboratory moves, conduct "security assessment upgrades," and identify watering responsibilities for BARC greenhouse staff. Bynum Decl. ¶ 3, July 27, 2007; Taylor Decl. ¶ 2.

As to the government's second point, that "few individuals outside the USDA have seen the blueprints," amicus argues that the blueprints are not predominantly internal because the USDA has released blueprints for various BARC buildings to the Maryland Historical Trust. But we agree with the government that disclosure of some blueprints

to an outside group does not vitiate the predominantly internal nature of the blueprints on file at BARC and used in the course of the abovementioned activities. After all, Elliott is presumably not seeking those blueprints that are housed at the Maryland Historical Trust, but rather wants those that remain exclusively under the agency's control. We therefore agree with the district court that the withheld blueprints satisfy Exemption 2's predominant internality requirement.

As explained above, however, to fall within Exemption 2's language documents withheld must also relate to "rules and practices governing agency personnel." *Crooker*, 670 F.2d at 1056. Satisfying this component of the threshold test presents little difficulty in cases where the withheld material itself constitutes an agency personnel rule or practice. *Crooker*, the canonical high 2 case, fits this mold, as the ATF training manual at issue there instructed government agents how to perform their official job duties. Other materials falling within this category include instructions to agency employees implementing the Equal Access to Justice Act, *Schiller*, 964 F.2d at 1206, Customs Service plans used to evaluate the qualifications of job applicants, *NTEU*, 802 F.2d at 527, and portions of the Manual for U.S. Marshals pertaining to the use of weapons and other law enforcement practices, *Cox v. U.S. Dep't of Justice*, 601 F.2d 1, 3–4 (D.C. Cir. 1979). These cases clearly reflect the House Report's conception of Exemption 2 as covering "[o]perating rules, guidelines, and manuals of procedure for Government investigators or examiners." H.R. Rep. No. 89-1497, at 10 (1966).

True, unlike manuals and guidelines, blueprints give agency employees little explicit guidance about how to do their jobs. Information need not take the form of a rule or practice, however, to fall within the high 2 exemption.

Rather, the exemption expressly protects from disclosure material "related" to agency rules or practices. In *Schwaner* we described two categories of material that could satisfy this relatedness requirement. One such category is exemplified by *Rose*, where the plaintiffs sought summaries of cases decided by the Air Force Academy's Honor Committee. Although case summaries are not themselves rules and practices, we explained that they "manifest and implement the rules and practices" of the agency relating to the conduct of cadets, who must conform their conduct not just to the Academy's Honor Code itself, but also to the Committee's decisions implementing the Code. *Schwaner*, 898 F.2d at 795*; see also Milner v. U.S. Dep't of the Navy*, 575 F.3d 959, 968 (9th Cir. 2009) (protecting from disclosure Navy maps depicting explosives' blast radii on the ground that the maps, created pursuant to a Navy manual, "constitute one part of the internal policies and procedures that [Navy] personnel are bound to follow when handling and storing explosive ordnance").

Exemption 2 also encompasses "materials that are so closely related to rules and practices that disclosure could lead to disclosure of the rule or practice itself." *Schwaner*, 898 F.2d at 796. For example, in *Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 829 (D.C. Cir. 1983), we allowed the FBI to withhold from disclosure routing instructions appearing on documents "to protect sensitive administrative instructions for the handling of the documents," and in *Lesar v. United States Department of Justice*, 636 F.2d 472, 485 (D.C. Cir. 1980), we concluded that Exemption 2 protected "symbols used to refer to FBI informants in FBI documents and records." As we explained in *Schwaner*, the "materials in these cases fall handily within the statutory requirement of being 'related' to agency rules or practices in that they bear upon, or cast light upon, those practices." *Schwaner*, 898 F.2d at 796. The notations in

*Founding Church of Scientology* revealed the agency's internal routing and distribution practices, and the redacted symbols in *Lesar* shed light on the FBI's practice of using symbols to communicate about secret informants. In contrast, the Air Force personnel lists requested in *Schwaner* shed little light on any agency practice other than the practice of collecting the data itself. 898 F.2d at 795–96. Although the agency had argued that the lists reflected Air Force duty assignment practices, we found any such link too "tenuous and indirect" to satisfy the "related" requirement. *Id.* at 798.

In *Schwaner*, moreover, we distinguished between high 2 and low 2 cases, observing that "[j]udicial willingness to sanction a weak relation to 'rules and practices' may be greatest when the asserted government interest is relatively weighty." *Id.* at 796. Thus with respect to high 2 materials, where the asserted government interest is, by definition, to prevent circumvention of law, the threshold inquiry may be somewhat less demanding than for low 2 matters, for which we require a tighter nexus between the withheld information and personnel rules and practices.

Acknowledging this more forgiving standard applicable to high 2 materials, amicus nonetheless complains that the "record is completely devoid of *any* explanation as to how the BARC blueprints relate to the rules that govern USDA employees, or the practices of those employees." Amicus Curiae's Br. 38 (emphasis added). Although this somewhat overstates the case, it is true that the government's briefs in both the district court and on appeal focus primarily on the predominant internality component of Exemption 2's threshold test, rather than on the requirement that withheld material relate to rules and practices governing agency personnel. But that is because in the district court Elliott never challenged the relatedness of the blueprints to the

practices of USDA employees. In his opposition to the government's summary judgment motion, Elliott cited *Jordan* for the proposition that Exemption 2's reference to "personnel" rules and practices refers only to matters relating to "pay, pensions, vacations, hours of work, lunch hours," and parking. Mem. in Opp'n to Summ. J. 4 (quoting *Jordan*, 591 F.2d at 763). Elliott also suggested that the USDA did not use the blueprints for "internal" purposes. *Id.* at 2. The district court rejected Elliott's first argument, explaining that we have since abandoned *Jordan*'s interpretation of "personnel" as encompassing only minor employment matters. *Elliott*, 2007 WL 1302588, at *4. The district court nonetheless denied in part the government's summary judgment motion on the grounds that the government had failed to establish the predominant internality of the blueprints or articulate clearly the connection between release of the blueprints and the particular statutes at risk of circumvention. *Id.* at *5.

Focusing, then, on these two deficiencies, the government filed a renewed summary judgment motion. In his opposition to that renewed motion, however, Elliott never addressed whether the blueprints fall within the scope of Exemption 2. Rather, he complained only that the government's affidavits were "made in bad faith," citing in support 7 U.S.C. § 2243, which authorizes the USDA Secretary to sell "photographic prints (including bromide enlargements), lantern slides, transparencies, blueprints, and forest maps." Mem. in Opp'n to Renewed Mot. for Summ. J. 1. Because Elliott failed to raise the issue in the district court, amicus may not challenge the blueprints' relationship to agency practices for the first time on appeal. *See Adams v. Rice*, 531 F.3d 936, 945 (D.C. Cir. 2008) (refusing to consider argument never made in district court).

**IV.**

Determining whether the blueprints qualify as predominantly internal documents that relate to agency personnel rules and practices does not end our analysis. As noted above, to withhold material under Exemption 2 the government must also demonstrate that "disclosure significantly risks circumvention of agency regulations or statutes." *Crooker*, 670 F.2d at 1074. Claiming this to be the case, the government asserted in the district court that disclosure of the blueprints "would render BARC vulnerable to potential threats and unnecessary risk in maintaining physical security over the research programs and critical infrastructure assets at BARC." Thessen Decl. ¶ 3, Aug. 13, 2007. According to the government, BARC buildings house various biological agents and toxins, illicit narcotics, and radioactive materials, and the campus contains critical infrastructure such as wastewater treatment plants, water distribution stations, and power transfer stations—all of which could be threatened by release of the blueprints. The government cited a variety of federal laws and policies that obligate the agency to protect these assets, including the Public Health Security and Bioterrorism Preparedness and Response Act of 2002, 107 Pub. L. No. 107-188, 116 Stat. 594 (2002), which provides for USDA regulation of certain biological agents and toxins, and presidential directives that set forth policies regarding the protection of critical infrastructure and food and agricultural systems against deliberate attacks, *see* Homeland Security Presidential Directive 7 (Dec. 17, 2003); Homeland Security Presidential Directive 9 (Jan. 30, 2004). Agreeing with the government, the district court found that disclosure of the blueprints "may risk circumvention of federal policies, statutes, or regulations." *Elliott*, 518 F. Supp. 2d at 221.

14

On appeal, amicus contends that the government failed to demonstrate that release of the blueprints would pose a "*significant* risk" to national security, Amicus Curiae's Br. 40, and that the "USDA failed to identify any specific USDA regulation or statute that could be circumvented by the release of the BARC blueprints," *id.* at 42. Amicus further argues that the district court "erred when it summarily concluded that none of the information contained in the blueprints can be segregated and disclosed." *Id.* at 43; *see* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt."); *Mead Data Cent. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); (noting that "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions").

But here again, Elliott failed to press these arguments in the district court. Even so, the government did address segregability in both of its summary judgment motions, arguing that release of redacted—i.e., partially blacked out—blueprints would necessarily reveal the location of sensitive areas depicted on those blueprints. Similarly, the government argued, if the agency released some blueprints but not others, it would effectively tip off intruders that potential targets such as biological agents are located in buildings whose blueprints were withheld.

Although Elliott challenged these assertions in neither of his motions opposing summary judgment, the district court, consistent with its "affirmative duty to consider the segregability issue sua sponte," passed on the issue, ultimately concluding that no reasonably segregable portion of the blueprints could be released without presenting a risk of circumvention. *Morley*, 508 F.3d at 1123 (quoting *Trans-*

15

*Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999)).  This is therefore not a case where "both the [agency] and the district court appear to have overlooked the segregability requirement." *Schiller*, 964 F.2d at 1209.  And, contrary to amicus's contention, "because the district court . . . was satisfied that [the agency's] affidavits properly placed the withheld documents within the scope of Exemption [2], it did not need to reach the question of *in camera* review," *Juarez v. Dep't of Justice*, 518 F.3d 54, 60 (D.C. Cir. 2008), particularly given that Elliott never disputed the content of the requested documents, *cf. Allen v. CIA*, 636 F.2d 1287, 1299 (D.C. Cir. 1980), *overruled on other grounds by Crooker*, 670 F.2d 1051, *as recognized in Founding Church of Scientology*, 721 F.2d at 829.

Elliott has benefited from the assistance of skilled appellate amicus, and we too are grateful for its diligent efforts, which have helped us understand the issues before us. Amicus's arguments, however, stray beyond those Elliott raised in the district court, and although we recognize that Elliott was pro se, and therefore held to less stringent pleading and forfeiture standards, we will not consider for the first time on appeal arguments that a plaintiff entirely failed to raise in the trial court. *See Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007).  That is particularly true where, as here, those arguments entail fact-intensive inquiries such as whether requested documents relate sufficiently to agency rules and practices or whether such documents—or portions thereof—could be released without compromising security and circumventing federal law.

## V.

One final issue remains.  To prevail on summary judgment, the "agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to

uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). "[E]ven if the protected records could be withheld under one of the FOIA exemptions, that does not absolve the [agency] of its duty to identify responsive documents, claim the relevant exemptions . . . , and explain its reasoning for withholding the documents in its affidavit." *Morley*, 508 F.3d at 1120. In response to Elliott's FOIA requests, USDA employees searched the records of the Real Property Section and the Engineering and Construction Branch, the only locations where BARC blueprints are stored.

Amicus argues that given the amount of time devoted to these searches—about two hours apiece—the agency's search was inherently inadequate. Although this argument is not forfeited—Elliott challenged in the district court the adequacy of the agency's search—we disagree. The government's affidavits describe these searches in detail, and amicus has presented no evidence calling into question the efficacy of the search beyond speculating as to the employees' ability to thoroughly search a filing cabinet or electronic database within the indicated time period. *See id.* at 1116 (noting that courts can rely on agency affidavits that are reasonably detailed and nonconclusory).

Amicus next complains that although the employee tasked with searching the Real Property Section looked for all BARC blueprints on file, the employee who searched the Engineering and Construction Branch looked only for blueprints for Building 22. Thus, amicus argues, the agency failed to conduct a search reasonably calculated to uncover the blueprints to *all* BARC buildings, as Elliott requested. Again, we disagree. In her declaration, the agency's FOIA coordinator stated that the agency had in fact compiled a list of "architectural drawings on file at the Engineering and

Construction Branch." Hutchison Decl. ¶ 6. Absent countervailing evidence, we have no basis to question the agency's assertion.

## VI.

We affirm the grant of summary judgment to the government.

*So ordered.*