# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 26, 2018        Decided September 4, 2018

No. 16-5298

EDWARD J. X. FORD, JR.,
APPELLANT

v.

CHARLES MASSARONE, COMMISSIONER OF THE UNITED
STATES PAROLE COMMISSION, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-02054)

*Zachary C. Schauf*, appointed by the court, argued the cause and filed briefs as *amicus curiae* in support of appellant. With him on the briefs was *David W. DeBruin*, appointed by the court.

*Edward J.X. Ford Jr.*, *pro se*, filed briefs for appellant.

*Peter C. Pfaffenroth*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Fred E. Haynes* and *Alessio D. Evangelista*, Assistant U.S. Attorneys, entered appearances.

Before: GARLAND, *Chief Judge*, and GRIFFITH and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: Edward Ford, Jr. is a federal prisoner serving several criminal sentences, including one for murder in violation of federal law and another for a separate murder in violation of D.C. law. In 2013, Ford sued the members of the U.S. Parole Commission, alleging (among other things) that the Commissioners had unlawfully delayed his first hearing for parole from his D.C. sentence.

Generally, once a D.C. offender has served the minimum term of his court-imposed sentence, he is eligible for parole and has a parole hearing at that time. The rule is different, though, for the small number of offenders like Ford who are serving sentences for both a D.C. crime and a federal crime committed before federal parole was abolished. In that situation, if an offender's eligibility for parole from his D.C. sentence comes before his projected parole date on his federal sentence, a federal regulation calls for delaying his first D.C. parole hearing until shortly before his projected federal parole date. The central question in this case is whether the federal regulation's mandate to delay the first D.C. parole hearing in that situation conflicts with D.C. law.

The district court granted summary judgment to the Commissioners on that claim as well as several others pressed by Ford. We conclude that Ford's first D.C. parole hearing was unlawfully delayed. We therefore reverse and remand for entry of summary judgment in Ford's favor on that issue, but we otherwise affirm the district court.

3

I.

In 1980, Ford committed three murders in three jurisdictions in the space of three months. Ford's final victim was an inmate at a federal prison in Northern Virginia, whom Ford broke into the facility to kill.

Ford was first convicted of the prison murder and conspiracy to commit that murder, both in violation of federal law. He received concurrent sentences of life imprisonment for the murder and 15 years for the conspiracy offense. Ford was next convicted of murder while armed, kidnapping while armed, and carrying a pistol without a license, all in violation of D.C. law. He received a sentence of 20 years to life for the murder, 10 years for the kidnapping, and an unspecified term for the gun offense—all concurrent to each other, but consecutive to his federal sentences.

Ford is currently serving his D.C. and federal sentences in federal prison. If paroled, he will begin serving another life sentence for a third murder he committed in Maryland.

Since 1997, when the D.C. Board of Parole was abolished, the U.S. Parole Commission has conducted parole proceedings for both D.C. and federal offenders. *See Daniel v. Fulwood*, 766 F.3d 57, 59 (D.C. Cir. 2014). In December 2001, the Commission held Ford's initial federal parole hearing.

The Commission applied the federal parole guidelines and determined that, barring disciplinary infractions in prison, Ford would be paroled from his federal sentence on November 22, 2005. The Commission also concluded that Ford would become eligible for parole from his D.C. sentence before his projected parole date for his federal sentence. Applying the federal regulation that governs the timing of D.C. parole

hearings for offenders serving both D.C. and federal sentences, 28 C.F.R. § 2.65, the Commission set the deadline for Ford's first D.C. parole hearing as July 22, 2005—four months before his projected federal parole date.

Ford had his first D.C. parole hearing shortly after that date, on August 10, 2005. He was denied parole. Since then, Ford has had three rehearings—in October 2010, October 2012, and February 2016—and has been denied parole each time. His next rehearing is scheduled for February 2019.

In 2013, before Ford's most recent rehearing, he filed a pro se complaint against the members of the Commission. Ford raised claims under 42 U.S.C. § 1983, including a claim that the Commissioners had violated the Ex Post Facto Clause by delaying his first D.C. parole hearing until his projected federal parole date (in 2005) instead of holding the hearing as soon as he became eligible for parole from his D.C. sentence (in 2000). The Commissioners argued in response that they had properly applied 28 C.F.R. § 2.65(e) when setting the date of Ford's first D.C. parole hearing.

The district court agreed, and granted summary judgment to the Commissioners on that issue and Ford's remaining claims. *Ford v. Massarone*, 208 F. Supp. 3d 91, 106, 108 (D.D.C. 2016). Ford appealed, and we appointed amicus counsel to present arguments favoring Ford's position.

## II.

Before addressing the merits of the claims Ford has preserved, we consider various threshold arguments advanced by the Commissioners as to why we should decline to reach some or all of Ford's claims. On the merits of the properly preserved claims, we hold that the Commissioners unlawfully

delayed Ford's first D.C. parole hearing. We rule in the Commissioners' favor on the remaining claims.

A.

As an initial matter, the Commissioners argue that Ford's action is barred by res judicata and by a federal statute restricting second or successive habeas actions. The Commissioners further contend that, insofar as Ford's action can proceed, he forfeited certain of his claims by failing to raise them before the district court.

1. The Commissioners argue that res judicata bars Ford's action because, in 2001, he filed a habeas petition in which he alleged (among other things) that the Commissioners had unlawfully delayed his first D.C. parole hearing. *Ford v. Attorney General*, No. 02-302 (D. Colo. Apr. 9, 2004). Res judicata, however, is an "affirmative defense" that "must [be] plead[ed] . . . in the answer to the complaint." *Brown v. District of Columbia*, 514 F.3d 1279, 1285 (D.C. Cir. 2008); *see also* Fed. R. Civ. P. 8(c)(1). The Commissioners failed to plead the defense here, so it is forfeited. And while we can overlook forfeiture and consider an issue not raised before the district court in "extraordinary circumstances," *see Lesesne v. Doe*, 712 F.3d 584, 588 (D.C. Cir. 2013), the Commissioners identify no such circumstances here.

2. The Commissioners next contend that Ford's action is barred by 28 U.S.C. § 2244(a), which provides that "[n]o circuit or district judge shall be required to entertain an application for a writ of habeas corpus" filed by a federal prisoner "if it appears that the legality" of his or her "detention has been determined by [a federal court] on a prior application for a writ of habeas corpus, except as provided in section 2255." In turn, § 2255 provides that a prisoner cannot bring a

"second or successive" habeas petition unless a federal court of appeals certifies that the petition meets certain criteria not relevant here. 28 U.S.C. § 2255(h); *see also id.* § 2244(b)(3).

The Commissioners' argument based on § 2244(a) again relies on Ford's 2001 habeas petition. While Ford's instant action is styled as a § 1983 suit, the Commissioners contend that it is subject to § 2244(a) because it is in substance a second habeas suit. And because no court of appeals has certified that the instant suit meets the criteria laid out in § 2255(h), the Commissioners argue, the suit is barred by § 2244(a).

Although the Commissioners did not raise their § 2244(a) argument in the district court, the argument cannot be forfeited because the requirement to obtain authorization for a second or successive habeas petition is a jurisdictional prerequisite. *See Burton v. Stewart*, 549 U.S. 147, 153 (2007) (certification is a jurisdictional requirement for state prisoners, under § 2244(b)(3)); *United States v. Springer*, 875 F.3d 968, 982 (10th Cir. 2017) (same for federal prisoners, under § 2255(h)).

The Commissioners' § 2244(a) argument fails on the merits, however. The Commissioners correctly note that certain claims can be raised only in a habeas suit: those that, if successful, "would necessarily demonstrate the invalidity of [the prisoner's] confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). On the other hand, "claims with only a probabilistic impact on custody" can be raised through § 1983. *Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 665 (D.C. Cir. 2013). And claims properly raised through § 1983 are not precluded by the bar against second or successive habeas petitions. *See Hill v. McDonough*, 547 U.S. 573, 576 (2006); *Nelson v. Campbell*, 541 U.S. 637, 642-43 (2004).

If Ford prevails here, then the only relief he will receive is "a new parole hearing at which . . . parole authorities may, in their discretion, decline to shorten his prison term." *Wilkinson*, 544 U.S. at 82. Ford's claims, then, have only a probabilistic impact on his custody, which means they were properly raised in a § 1983 suit. Section 2244(a) thus does not bar Ford's instant suit.

3. The Commissioners next contend that Ford forfeited several arguments advanced by appointed amicus by failing to raise them below. When a plaintiff represents himself in the district court, we hold him to "less stringent pleading and forfeiture standards." *Elliott v. USDA*, 596 F.3d 842, 851 (D.C. Cir. 2010). Still, "we will not consider for the first time on appeal arguments that a [pro se] plaintiff entirely failed to raise" below. *Id.*

The Commissioners initially set their sights on appointed amicus's primary argument: that the Commissioners violated D.C. and federal statutes by holding Ford's first D.C. parole hearing in 2005 rather than 2000. In the district court, Ford alleged that, by delaying his hearing, the Commissioners had violated the Ex Post Facto Clause. To prevail on that claim, he needed to prove that (i) the date of his hearing was set in accordance with a legal rule established after he was convicted of his D.C. offense, and (ii) the "retroactive application of [that rule] create[d] a significant risk of prolonging his incarceration as compared to application of the prior [rule]." *Daniel v. Fulwood*, 766 F.3d 57, 61 (D.C. Cir. 2014) (formatting modified); *see Garner. v. Jones*, 529 U.S. 244, 251 (2000).

With respect to the latter point, Ford's complaint alleged that, under the law as it stood when he was convicted, he became eligible for parole from his D.C. sentence in May 2000. *Ford v. Massarone*, No. 13-cv-02054, Complaint at ¶ ¶ 48, 77

(D.D.C. Dec. 26, 2013), ECF No. 1. The Commissioners read that allegation as contending that Ford "should have received [his initial] parole hearing . . . in 2000." *Id.*, Memorandum of Law in Support of Motion for Summary Judgment at 3 (D.D.C. Jan. 28, 2016), ECF No. 48. In response, Ford confirmed he was alleging that he had been entitled to an initial hearing in 2000. *Id.*, Declaration Attached to Response to Motion for Summary Judgment at 3 (D.D.C. Feb. 19, 2016), ECF No. 51. The legal bases for that entitlement, Ford claimed, were this court's "ruling in *Chatman-Bey v. Meese*, 797 F.2d 987 (D.C. Cir. 1986)" (which, as explained below, interprets 18 U.S.C. § 4205 (1976), the federal statute on which appointed amicus relies) and D.C.'s parole "statutes, regulations, guidelines, policies[,] and practices" (which includes D.C. Code. § 24-409, the D.C. statute on which appointed amicus principally relies). Complaint at ¶ 48; *see also* Declaration at 3.

Reading the pleadings through the lens we normally apply to pro se filings, Ford ultimately alleged that, under the D.C. and federal statutes at issue, he was entitled to a parole hearing years before he actually received one. He thereby sufficiently preserved a claim that 28 C.F.R. § 2.65, the regulation that delayed his parole hearing, unlawfully conflicts with 18 U.S.C. § 4205 and D.C. Code § 24-409. (While Ford sued under § 1983, which affords relief only for violations of federal law, the government has not argued that Ford improperly alleged a violation of D.C. law (§ 24-409) in a § 1983 suit.)

The Commissioners' next (and final) forfeiture argument fares better. That argument concerns appointed amicus's contention that the Commissioners violated the Ex Post Facto Clause by using Ford's three murder convictions as grounds for both (i) delaying his parole rehearings and (ii) denying him parole at those rehearings. Ford did not include that claim in his complaint. And in response to the Commissioners' motion

for summary judgment, Ford reiterated that he had never argued "that the longer set-off[s]"—meaning the delays between his rehearings—were "Ex Post Facto violation[s]." *Ford v. Massarone*, No. 13-cv-02054, Memorandum of Law in Support of Response to Motion for Summary Judgment at 13 (D.D.C. Feb. 19, 2016), ECF No. 51. The claim is therefore forfeited.

## B.

We now turn to appointed amicus's primary merits argument: that the Commissioners violated D.C. and federal statutes by delaying Ford's first D.C. parole hearing from 2000 until 2005.

1. To understand appointed amicus's argument in that regard, one must first identify when Ford would have received his first D.C. parole hearing had he been convicted only of his D.C. offense. When sentencing offenders for violating D.C. law, D.C. courts set minimum and maximum terms of incarceration. D.C. Code § 24-403(a). An offender becomes eligible for parole "after having served [his] minimum sentence." *Id.*; *see also id.* § 24-404(a). And under the 1987 D.C. parole guidelines (which the parties agree are the relevant ones), an offender is entitled to an initial parole hearing as soon as he is eligible for parole. D.C. Mun. Regs. tit. 28, § 200.3(c) (1987); *id.* § 199.1 (1987). In the district court, Ford alleged (and the Commissioners agreed) that he finished serving his minimum sentence on his D.C. conviction on May 22, 2000. Complaint at ¶ 48; Memorandum of Law in Support of Motion for Summary Judgment at 17. So if Ford had been convicted only of his D.C. offense, he would have been due his first D.C. parole hearing in May 2000.

The central issue before us is whether Ford's federal conviction should affect the date of his first D.C. parole hearing. While Congress "eliminated most forms of parole" for federal offenses as of November 1, 1987, parole remains available to offenders like Ford who committed federal crimes before that date. *Howard v. Caufield*, 765 F.3d 1, 2 n.1. (D.C. Cir. 2014) (quoting *Johnson v. United States*, 529 U.S. 694, 696-97 (2000)). The federal parole process begins with an initial hearing, at which the Commission applies the federal parole guidelines (codified at 28 C.F.R. § 2.20) to determine the offender's projected parole date for the federal sentence—i.e., the date on which the offender will be released barring any misconduct in prison. 28 C.F.R. § 2.12.

So what happens when an offender is serving both D.C. and federal sentences? When do the D.C. parole hearings commence in that circumstance? A federal regulation, 28 C.F.R. § 2.65, dictates the answer. Under sub-section (e) of that regulation, the date of the first D.C. parole hearing is tied to one of two dates, whichever comes later: (i) the projected parole date for the federal sentence, as described above; or (ii) the so-called "single parole eligibility date," *see* 28 C.F.R. § 2.5—a date that takes into account the parole eligibility date for the D.C. offense standing alone.

The single parole eligibility date, in particular, turns on an application of 18 U.S.C. § 4205(a) (1976) to an offender's aggregated D.C. and federal sentences. Under that statute, the general rule is that an offender is eligible for parole after serving the lesser of one third of his aggregate sentence or 10 years. The statute makes an exception, however, for situations in which a different eligibility date is "otherwise provided by law." The "otherwise provided by law" clause comes into play if an offender's D.C. parole eligibility date—that is, the date on which he finishes serving his D.C. minimum sentence—is later

than the eligibility date otherwise prescribed by § 4205(a). In such a case, the D.C. eligibility date controls. *See Chatman-Bey v. Meese*, 797 F.2d 987, 993-94 (D.C. Cir. 1986), *vacated in part en banc*, 864 F.2d 804 (D.C. Cir. 1988).

Consider, for example, an offender serving a federal sentence of 20 years and a D.C. sentence of 20 to 50 years. Based on his aggregate sentence of 70 years, § 4205(a)'s general rule would produce a parole eligibility date 10 years from the date of incarceration (which is less than one-third of the aggregate sentence). But because the D.C. eligibility date would be 20 years, the 20-year date for the D.C. offense would supersede the 10-year date as the single parole eligibility date. Now say that the Commission had set the offender's projected federal parole date as 15 years from the date of incarceration. Because the 20-year single parole eligibility date is later than the 15-year projected parole date for the federal sentence, then under 28 C.F.R. § 2.65(e), the first D.C. parole hearing would be tied to the 20-year single parole eligibility date. The result is that the Commission would hold the offender's first D.C. parole hearing shortly before his parole eligibility date for the D.C. offense, just as the Commission would have done if the offender were serving only his D.C. sentence. D.C. Mun. Regs. tit. 28, § 200.3(c) (1987); *id.* § 199.1 (1987).

Ford's case presents the opposite scenario, in which the projected federal parole date comes after the single parole eligibility date. In that circumstance, the projected federal parole date drives the date of the initial D.C. parole hearing, in that the hearing is delayed until shortly before the projected federal parole date. *See* 28 C.F.R. § 2.65(e). The D.C. parole hearing, then, would wait until the offender could actually be released from his federal sentence, rather than coming at a time when a favorable resolution could not bring about an actual release in light of the remaining federal time to be served.

In Ford's case, for instance, his single parole eligibility date, of May 22, 2000, was the date he had served his minimum D.C. sentence. Complaint at ¶ 48; Commissioners' Motion for Summary Judgment at 17. His projected federal release date, of November 22, 2005, was later than the single parole eligibility date. And because his federal parole date came after his single parole eligibility date, the deadline to hold his first D.C. parole hearing was tied to his federal parole date—in particular, four months before that date, or July 22, 2005. 28 C.F.R. § 2.65(e). The Commission held Ford's first D.C. hearing shortly after that deadline, on August 10, 2005.

2. Appointed amicus does not contend that the Commission misapplied 28 C.F.R. § 2.65(e) in scheduling Ford's first D.C. parole hearing for 2005 rather than 2000. Instead, appointed amicus contends that the regulation itself is unlawful because it conflicts with D.C. and federal statutes. Appointed amicus's first argument is that the regulation cannot be squared with D.C. Code § 24-409. Because we agree with that argument, we have no occasion to consider whether the regulation also conflicts with other D.C. or federal statutes.

Section 24-409 provides that the Commission "shall have and exercise the same power and authority" over D.C. offenders housed in federal prisons as the (now-defunct) D.C. Board of Parole once exercised over D.C. offenders housed in D.C. prisons. (The statute refers to the Commission as the U.S. Board of Parole, which was the agency's title until 1976. *See* Parole Commission and Reorganization Act, Pub. L. No. 94-233, § 12, 90 Stat. 219, 233 (1976)). As explained above, if the D.C. Board of Parole had applied D.C. parole guidelines to Ford's case, without regard to his federal offense, the Board would have been obligated to hold his first parole hearing as soon as he served his minimum D.C. sentence—that is, in May 2000. D.C. Mun. Regs. tit. 28, § 200.3(c) (1987); *see also id.*

§ 199.1 (1987). So, appointed amicus argues, if the Commission has the "same power" as the Board, then the Commission was also obligated to hold Ford's first parole hearing in May 2000.

The Commissioners concede that § 24-409 covers offenders serving aggregated D.C. and federal sentences, not just those serving D.C. sentences in federal prisons. The Commissioners also concede that § 24-409 requires that, when they conduct D.C. parole proceedings, they apply the D.C. guidelines governing whether an offender is suitable for parole. Complaint at ¶ 32; *Ford v. Massarone* No. 13-cv-02054, Answer at ¶ 32 (D.D.C. Apr. 3, 2015), ECF No. 26. The Commissioners contend, however, that they can decide for themselves *when* to hold the first hearing at which those D.C. parole guidelines will be applied.

In support of that argument, the Commissioners point to the Seventh Circuit's decision in *Thomas v. Brennan*, 961 F.2d 612 (7th Cir. 1992). The offender there, like Ford here, was serving both D.C. and federal sentences. *Id.* at 613. And like Ford, the offender there alleged that the Commission's regulation (which would delay his first D.C. parole hearing by seven years) clashed with D.C. Code § 24-409 and thus was unlawful. *Id.* at 616.

The Seventh Circuit first reaffirmed its prior holdings that § 24-409 covers offenders serving aggregated D.C. and federal sentences. *Id.* at 617 (citing *Johnson v. Williford*, 821 F.2d 1279, 1288 n.5 (7th Cir. 1987)). The court next reaffirmed that § 24-409 "requires the Commission to apply D.C. parole laws to D.C. Code offenses." *Id.* (citing 821 F.2d at 1284). That includes not only the D.C. "guidelines [for] determining parole suitability, but also the [D.C.] standards that set the time at which [parole authorities] must apply those guidelines." *Id.* at

618. Were it otherwise, the court explained, § 24-409 "would lose much of its force"; the statute's mandate that the Commission "apply D.C. parole suitability guidelines would mean little if [the Commission] were permitted to delay [the guidelines'] application in accordance with a federal regulation." *Id.* Thus, the court held that, as a general matter, § 24-409 requires the Commission to hold an offender's original D.C. parole hearing at (or shortly before) his D.C. parole eligibility date. *Id.*

The court "carve[d] an exception," however, for offenders like Ford with projected federal parole dates later than their D.C. parole eligibility dates. *Id.* In such cases, the court held, the Commission can delay the offender's first D.C. parole hearing until shortly before his federal parole date. *Id.* That delay is warranted, the court believed, for three reasons.

First, the court noted, regardless of when the first D.C. parole hearing takes place, the offender would need to remain in prison on his federal sentence until his federal parole date. *Id.* Second, the court concluded that delaying an offender's first D.C. parole hearing until his federal parole date does not substantially injure him; he would enjoy only an "incremental benefit" if the hearing were held at his D.C. eligibility date. *Id.* Finally, the court observed that, under our court's decision in *Chatman-Bey*, an offender's single parole eligibility date as prescribed by § 4205 can be later than his D.C. parole eligibility date. And if an offender's eligibility date can be delayed beyond his D.C. eligibility date until the date set by § 4205, the court thought, then the D.C. hearing can be delayed until the offender's projected federal parole date. *Id.* at 618-19.

3. We agree with the Seventh Circuit's conclusion that § 24-409 generally requires the Commission to hold an

offender's first D.C. parole hearing at his D.C. parole eligibility date. But in our view, that rule also applies to offenders like Ford who become eligible for D.C. parole before their projected federal parole date.

The text of § 24-409 makes no exception for offenders in that position. Instead, the text applies generally—and equally—to all offenders "convicted in the District of Columbia of crimes." We perceive no basis in the terms of the statute to draw a distinction between offenders who become eligible for D.C. parole before their projected federal parole date and those who become eligible for D.C. parole after their projected federal parole date.

The *Thomas* court grounded its support of such a distinction, not in the statutory text, but in other considerations. Respectfully, we do not understand those considerations to justify the distinction.

First, it is undoubtedly true that an offender in Ford's position cannot be released from prison until he is paroled from both his D.C. and federal sentences. *Thomas*, 961 F.2d at 618. But an offender can be paroled from one sentence first and still remain incarcerated until he is paroled from the other. That is Ford's current situation; he was paroled from his federal sentence in August 2005 but remains in prison serving his D.C. sentence.

Second, an offender serving both D.C. and federal sentences seemingly could gain more than an "incremental benefit" if his D.C. parole hearings began at the time of his D.C. parole eligibility instead of being delayed until his federal parole date. *Id.* To see why, it is necessary to understand how the relevant D.C. parole guidelines operate in an offender's first parole hearing and in any rehearings.

In an offender's first hearing, the Commission uses various offender characteristics to calculate what is known as a "salient factor score" (or SFS). D.C. Mun. Regs. tit. 28, § 204.4, app. 2-1 (1987). The Commission then considers a list of "pre-incarceration factors"—including whether the offense was violent or involved use of a gun—which can bump up the SFS. *Id.* § 204.18, app. 2-1 (1987). Similarly, the Commission considers a list of "post-incarceration factors"—including whether the offender has committed disciplinary infractions or participated in rehabilitative programs—which can move the SFS in either direction. *Id.*

If the adjusted SFS is between 0 and 2, then "[p]arole shall be granted"; if the score is between 3 and 5, then "[p]arole shall be denied . . . and rehearing scheduled." *Id.* § 204.19, app. 2-1 (1987). For an offender whose maximum sentence is five years or longer, rehearings "shall ordinarily occur within twelve (12) months," though the Commission has broad discretion to delay rehearings. *Id.* §§ 104.2, 104.11 (1988).

In a rehearing, the Commission takes the adjusted SFS from the previous hearing and then accounts for the offender's interim "institutional record." *Id.* § 204.21, app. 2-2 (1987). The Commission adds a point if the offender has "committed serious [disciplinary] infractions" since his previous hearing and subtracts a point if he has "demonstrated sustained achievement in . . . prison programs" in that time. *Id.* app. 2-2 (1987). The Commission then applies a different, rehearing-specific point scale, under which "[p]arole shall be granted" if the score is between 0 and 3, and denied if the score is 4 or 5. *Id.* § 204.21, app. 2-2 (1987).

So how could an offender be injured if his D.C. parole hearings are delayed until his projected federal parole date? For one thing, even if an offender has just a single hearing

before his federal parole date, when he later has his first rehearing, the more lenient, rehearing-specific point scale will apply. For another, at that rehearing, the offender can obtain a second deduction for rehabilitative efforts. Finally, if an offender's D.C. parole eligibility date is several years before his projected federal parole date, then he could potentially have several D.C. parole hearings before being paroled from his federal sentence. That would give him the opportunity to reduce his SFS over time and thereby obtain an earlier D.C. release date.

Consider, for example, an offender with a D.C. eligibility date six years before his federal parole date. Even if that offender had an SFS of 5 at his first D.C. parole hearing, he could, through persistent rehabilitative efforts, reduce his score to 0 by the time of his federal parole date, provided the Commission held rehearings each year as it "ordinarily" does. D.C. Mun. Regs. tit. 28, § 104.2 (1988). He then could be paroled from his D.C. and federal sentences simultaneously, which would not be the case if his D.C. parole hearings were delayed until his federal release. In light of those substantial potential benefits from holding D.C. parole hearings as soon as an offender is eligible for D.C. parole, we cannot write off the inconsistency between the Commission's regulation and § 24-409 as immaterial.

The *Thomas* court noted, finally, that under our decision in *Chatman-Bey*, an offender's single parole eligibility date might be later than the D.C. eligibility date (i.e., the parole eligibility date that would apply if the offender were serving a D.C. sentence but not a federal one). *See Thomas*, 961 F.2d at 618-19. That would happen if the eligibility date dictated by 18 U.S.C. § 4205(a) were later than the D.C. eligibility date. *See supra* § II.B.1. But while *Chatman-Bey* contemplates that an offender's single parole eligibility date in that situation

would be later than his D.C. eligibility date, this case involves the date of a D.C. parole *hearing*, not the date of parole *eligibility*. And for the reasons we have explained, Ford's initial D.C. parole hearing should have been in 2000, not 2005.

We recognize that, in reaching a different conclusion on that issue than the *Thomas* court did, our decision could result in the Commission's applying different rules to offenders serving aggregated D.C. and federal sentences depending on where the offenders are incarcerated. But we must give effect to the terms of D.C. Code § 24-409 as we understand them, regardless of the implications for the Commission's administration of parole hearings in other jurisdictions. Additionally, the burdens on the Commission from having to keep track of distinct rules for different jurisdictions will depend on the number of affected offenders; and as the Commissioners acknowledged at oral argument, there are only about a dozen parole-eligible offenders presently serving aggregated D.C. and federal sentences in federal prison (and that population will naturally dissipate over time).

In short, we hold that, under D.C. Code § 24-409, Ford should have received his first parole hearing as soon as he finished serving his D.C. minimum sentence—in May 2000. As a remedy for that unlawful delay, appointed amicus suggests an order requiring the Commission to (i) reconsider each of its prior parole decisions, this time assuming that Ford had received his first parole hearing in May 2000, and (ii) hold a new parole hearing at which each of the reconsidered prior decisions can be taken into account. We conclude that the suggested remedy is appropriate. We of course express no view about the outcome of the new parole hearing, a decision that rests with the Commission alone in the first instance.

4.  In addition to arguing that the delay in Ford's initial D.C. parole hearing violates D.C. and federal statutes, appointed amicus also contends that the delay violates the Ex Post Facto Clause.  The remedy for that alleged constitutional violation, appointed amicus says, should be the same as the remedy for the alleged statutory violations.

This case, then, is one in which a party has raised both constitutional and statutory claims, and, by winning on the latter, has secured "all the relief [the party] seeks." *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009).  In that situation, we have no occasion to decide the constitutional issue.  *Id.*  We therefore do not reach appointed amicus's delay-related Ex Post Facto claim.

C.

Appointed amicus also advances two arguments concerning the Commission's decisions to deny Ford parole.  We find those arguments unpersuasive.

1.  Appointed amicus contends that the Commissioners violated the Ex Post Facto by repeatedly denying Ford parole on the ground that he had three murder convictions.  Again, parole authorities violate the Ex Post Facto Clause when (i) they apply parole guidelines promulgated after an offender was convicted, and (ii) that "retroactive application . . . creates a significant risk of prolonging [the offender's] incarceration as compared to application of the prior guidelines."  *Daniel*, 766 F.3d at 61 (formatting modified).

In the district court, Ford alleged (and the Commissioners agreed) that, when he was convicted of his D.C. offense, the parole guidelines in effect were those published in 1987.  Complaint at ¶ 16; Answer at 5.  Under the 1987 guidelines, if

an offender's adjusted SFS indicates that he should be released but he has an "[u]nusually extensive and serious prior criminal record ([meaning] at least five felony convictions)," then the D.C. Board can depart from the SFS scale and deny him parole. D.C. Mun. Regs. tit. 28, app. 2-1 (1987). In a 1991 Policy Guideline, the D.C. Board interpreted that departure provision to apply only when an offender's five convictions were for certain enumerated felonies. Joint App. 167-68. Under the 2000 guidelines, on the other hand, the Commission can deny parole to any offender with a "[p]rior record of violence more extensive or serious than that taken in account in the guidelines"—regardless of how many convictions the offender has, or the specific crimes of which he was convicted. 28 C.F.R. § 2.80(n)(2)(ii)(A) (2000).

Here, the Commission's stated grounds for denying Ford parole in 2005, 2012, and 2016 were his three murder convictions. And in 2010, the Commission's stated grounds were the three murders, as well as his 1958 conviction for housebreaking (which is not a qualifying felony under the 1991 Policy Guideline) and his 1965 conviction for robbery (which is a qualifying felony). According to appointed amicus, each of those four denials was impermissible under the 1987 guidelines as interpreted by the 1991 policy guideline. That is so, appointed amicus says, because three murders—or three murders and a robbery—do not five felony convictions make. On the other hand, appointed amicus notes, Ford's three murder convictions were a permissible reason to deny him parole under the 2000 guidelines. Thus, appointed amicus concludes, when the Commission explicitly relied on Ford's three murder convictions, it revealed it was retroactively applying the 2000 guidelines, which worked to Ford's detriment.

Assuming arguendo that the Commission did apply the 2000 guidelines at Ford's parole hearings, appointed amicus's argument still fails. We have held that, when the Commission applies the 1987 guidelines, it can "depart from [the guidelines'] numerical system" anytime it wishes, "as long as it 'specifies in writing those factors which it used.'" *Bailey v. Fulwood*, 793 F.3d 127, 132 (D.C. Cir. 2015) (formatting modified) (quoting *McRae v. Hyman*, 667 A.2d 1356, 1360 (D.C. 1995)). And "the 1991 Policy Guideline does not limit the [Commission's] discretion." *Bailey*, 793 F.3d at 133. The guidelines in effect when Ford was convicted, then, would have posed no obstacle if the Commission wished to deny Ford parole based on his three murder convictions. Hence the retroactive application of the 2000 guidelines—which would *also* permit the Commission to deny Ford parole because of his three murder convictions—would not pose a significant risk of increasing Ford's prison term.

2. Appointed amicus additionally contends that, by repeatedly denying Ford parole because he had three murder convictions, the Commission violated the Due Process Clause. Parole authorities deprive an offender of due process only if their decisions are "either totally lacking in evidentiary support or [are] so irrational as to be fundamentally unfair." *Duckett v. Quick*, 282 F.3d 844, 847 (D.C. Cir. 2002). Ford committed three murders in three months, breaking into prison to commit one of them. Given those facts, we cannot consider the Commission's decisions to deny Ford parole to have been irrational.

D.

Ford advances various additional arguments in his pro se briefs. We find those arguments to be without merit.

The Commission delayed Ford's rehearing scheduled for October 2015 until February 2016.  Ford contends the decision to delay his hearing was arbitrary and capricious, in violation of the Administrative Procedure Act.  5 U.S.C. § 706(2)(a). When the rehearing was held in February, though, the Commission again denied Ford parole.  And unlike the five-year delay in Ford's original hearing—which, as explained above, might have prejudiced him—the four-month delay from October 2015 to February 2016 could not have hurt him because it had no effect on his score under the parole guidelines.  *Cf. Phillips v. Fulwood*, 616 F.3d 577, 582 (D.C. Cir. 2010) (holding that an offender's Ex Post Facto challenge was moot in part because, under either set of parole guidelines at issue, the offender's guideline score was the same).

Ford also contends that the Commission violated the Double Jeopardy Clause by using his murder convictions (i) as grounds for departing upward from the federal parole guidelines when setting his projected federal parole date, and (ii) as grounds for denying him parole from his D.C. sentence. Among other things, the Double Jeopardy Clause "prohibits the government from punishing [an offender] twice . . . for the same offense."  *United States v. Ursery*, 518 U.S. 267, 273 (1996) (formatting modified).  When parole authorities deny an offender parole, however, they do not impose a new punishment; rather, they decline to relieve the offender from the original punishment that is his sentence.  *Alessi v. Quinlan*, 711 F.2d 497, 501 (2d Cir. 1983); *Averhart v. Tutsie*, 618 F.2d 479, 483-84 (7th Cir. 1980).  Nor do parole authorities impose a new punishment when they set a parole date later than that recommended by the relevant parole guidelines, so long as departing from the guidelines does not increase the offender's sentence.  *Kell v. U.S. Parole Comm'n*, 26 F.3d 1016, 1020 (10th Cir. 1994).  Because neither of the acts on which Ford bases his double jeopardy claim was an imposition of

punishment for purposes of the Double Jeopardy Clause, the two acts together were not "multiple punishments . . . for the same offense." *Ursery*, 518 U.S. at 273 (formatting modified).

\*     \*     \*     \*     \*

For the foregoing reasons, we affirm in part, reverse in part, and remand for entry of summary judgment in Ford's favor on his claim that the Commissioners unlawfully delayed his first D.C. parole hearing.

*So ordered.*